STATE

v.

Peter BADESSA.

No. 86-443-C.A.

Supreme Court of Rhode Island.

Dec. 16, 1987.

James E. O'Neil, Atty. Gen., Thomas Dickinson, Jane M. McSoley, Asst. Attys. Gen., for plaintiff.

Edward J. Romano, Providence, for defendant.

## OPINION

SHEA, Justice.

On February 20, 1986, Peter Badessa (defendant) was convicted after trial in Superior Court of larceny of property with a value in excess of $500 in violation of G.L. 1956 (1981 Reenactment) § 11–41–1. He was sentenced to ten years imprisonment, six to serve, four years suspended, and four years probation under § 11–41–5. On appeal he alleges that he was denied the opportunity for a full and fair hearing, outside the presence of the jury, on his motion to suppress out-of-court and in-court identifications of him by two witnesses. He also contends that the trial justice unduly restricted cross-examination. We affirm.

The state's case was based primarily on the out-of-court and in-court identifications of defendant by two witnesses. Only one of these witnesses was available to testify at trial. This witness stated that on November 23, 1983, he and the unavailable witness watched a man remove a plastic sunroof from a gray Camaro and place it in a red car with a white roof and license plate TERRY–5 in the Lincoln Mall parking lot. They reported the incident to Lincoln Mall security.

On November 30, 1983, these witnesses were asked to report to the Lincoln police department to view a photo array. They viewed the photos separately. They each told the police officer conducting the investigation that the photograph of defendant resembled the man they saw taking the plastic sunroof. However, neither witness was able to make a positive identification at that time.

On December 8, 1983, the witnesses were again in the Lincoln Mall parking lot and once again saw the man they had previously seen taking the plastic sunroof on November 23. They did not immediately report this incident. However, a Lincoln Mall security officer observed the same man engaging in suspicious activity and contacted the Lincoln police. The defendant was arrested shortly thereafter.

Later that day, the witnesses were recalled to the police station and were again shown photo arrays. This time each witness positively identified defendant.

Before impaneling the jury, the trial judge conducted a hearing on defendant's motion to suppress these witnesses' out-of-court and in-court identifications. The state called the Lincoln police officer who had presented the photo arrays to the two witnesses. He testified that the presentation of the photo arrays was conducted fairly; that is there was no implicit or explicit suggestion to the witnesses that defendant was a suspect in the police investigation. His testimony was not impeached during cross-examination.

After completion of the police officer's testimony, the prosecutor informed the court that the two witnesses had accidentally gone to the wrong courthouse and that attempts to locate them had failed. However, the prosecutor informed the court that the state was willing to rest on the police officer's testimony.

Trial counsel for defendant requested a continuance. He told the trial judge that although he did not have the missing witnesses under subpoena, he was under the assumption that they would be available during the suppression hearing. The trial judge refused a continuance. He agreed that defense counsel had a legitimate expectation that the witnesses would be available for the suppression hearing. For that reason the trial judge agreed to reserve judgment on the motion to suppress until the defense was given an opportunity to examine those witnesses in the absence of the jury, but in the interest of time the trial would proceed.

The defendant's trial counsel, however, approached the bench and insisted upon a ruling before bringing in the jury panel. The trial judge acceded to this request and denied defendant's motion to suppress on the ground that defendant had failed to satisfy his burden to show that the photo array was unnecessarily suggestive. *See, e.g., State v. Lemon,* 478 A.2d 175, 178 (R.I.1984). The trial judge also noted that the photo array was "one of the better

displays I have seen in the twelve years I have been on the court."

The following day the missing witnesses appeared, and trial counsel asked the court for a hearing outside the presence of the jury to determine whether their in-court and out-of-court identifications should be suppressed. This request was essentially a motion to reopen the suppression hearing. The trial judge denied the request. He explained that on the previous day he had offered to reserve judgment of defendant's motion to suppress until the defense had the opportunity to voir dire the missing witnesses outside the presence of the jury. However, upon the insistence of the defense, he had decided the issue. He stated that he was not going to allow the defense "to have a second bite of the apple."

■ The defendant now contends that he was denied due process by the trial judge's ruling not to reopen his motion to suppress.

Whether wise or unwise, defense counsel made a strategic decision when he demanded a ruling on his motion to suppress before the impanelment of the jury. In this particular case, his strategy backfired; the trial judge properly ruled that the defense had not satisfied its burden of proof and denied its motion to suppress.

"It is well established in this jurisdiction that a motion to reopen is within the sound discretion of the trial justice and that his decision thereon will not be disturbed by this court, unless clearly an abuse of such discretion." *Russo v. G. W. Gooden, Inc.*, 108 R.I. 356, 361–62, 275 A.2d 266, 270 (1971). Because trial counsel demanded an immediate ruling and because he presented no evidence of any impropriety in the photo-array-identification procedure, the trial judge was well within his discretion in denying defendant's request to reopen the suppression hearing.

An examination of the transcript discloses that even if the trial justice had reopened the suppression hearing, defense counsel would not have been able to find even a hint of suggestiveness in the photo-array-identification procedure since he had disclosed nothing on his crossexamination of the witness. Further, after review of the trial exhibits, we feel that the trial justice's observation that it was an excellent photo array was well founded.

■ The defendant also alleges that the trial judge improperly restricted cross-examination of the Lincoln police officer during the suppression hearing, by sustaining the state's objection to two questions:

(1) did either witness select any other photograph in the initial presentation of the photo array on November 30, 1983?; and

(2) how long did the two witnesses view the photo array on November 30, 1983?

The issue facing the court during the suppression hearing was whether the photo array was presented to the witnesses in such a manner as to be "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968). The trial judge correctly ruled that defense counsel's questions were irrelevant to this issue.

For these reasons the defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of the case are remanded to the Superior Court.