### STATE

v.

### William M. MILLER.

No. 95–337–C.A.

Supreme Court of Rhode Island.

June 27, 1996.

Andrea Mendes, Special Asst. Atty. General, Aaron Weisman, Asst. Atty. General, for Plaintiff.

John A. MacFadyen, III, Lise J. Gescheidt, Richard A. Gonnella, Providence, for Defendant.

## OPINION

WEISBERGER, Chief Justice.

This case comes before us on appeal by the defendant, William M. Miller, from a judgment of conviction entered June 13, 1995, in the Superior Court for the County of Providence of one count of first-degree sexual assault, to wit, vaginal intercourse by force or coercion in violation of G.L.1956 §§ 11–37–2 and 11–37–3. Following the verdict, the defendant moved for a new trial. On April 27, 1995, the trial justice denied the motion. On June 13, 1995, the defendant was sentenced to thirty years in the Adult Correctional Institutions, with fifteen years to serve, fifteen years suspended, and fifteen years probation. For the reasons stated herein, we vacate the conviction and remand the case for a new trial. The facts of the case insofar as pertinent to the defendant's appeal are as follows.

In April of 1991 Jane Doe (a fictitious name), who was then a Brown University student and a member of a Brown University track team, alleged that she had been raped on two separate occasions by defendant, a Brown University track coach. Doe alleged that the first incident took place on a sidewalk in an unspecified residential area of Providence in the vicinity of Brown University sometime between February 15 and March 15, 1990, and that the second occurred in her dormitory room sometime between February 16 and February 18, 1991. Doe also alleged that defendant threatened to hurt her if she reported these incidents to the police. The defendant was subsequently indicted by a grand jury on two counts of first-degree sexual assault, to wit, vaginal intercourse by force or coercion in violation of §§ 11–37–2 and 11–37–3 and one count of witness intimidation in violation of G.L.1956 § 11–32–5.

In the course of trial defendant moved for a judgment of acquittal on the charge of witness intimidation. This motion was granted by the trial justice. On April 14, 1995, the jury returned a verdict of not guilty on the first count of sexual assault and guilty on the second count.

In support of his appeal from the judgment of conviction on count 2, defendant raises five issues, only three of which need be considered by this court. Further facts will be supplied as necessary to discuss these issues.

I

The Motion to Dismiss the Grand Jury Indictment

Prior to trial, defendant moved to dismiss his grand jury indictment on three separate grounds. He argues that any of these grounds is a sufficient reason for dismissal of the indictment.

The defendant first contends that the grand jury indictment was not returned in open court as required by Rule 6(f) of the Superior Court Rules of Criminal Procedure. Rule 6(f) provides that "[t]he indictment shall be returned by the grand jury to a judge in open court." The defendant argues that Rule 6(f) requires the grand jury to announce the accusation publicly, and that the fact that the courtroom was closed to the public when the indictment was read constitutes a basis for dismissal of the indictment. We disagree.

■ We are of the opinion that "open court" under Rule 6(f) should be read to require that the indictment be returned in a courtroom and not in chambers. The indictment in fact was returned in the courtroom in the presence of the judge and the prosecuting attorney. Exclusion of the public has long been Superior Court custom and practice, particularly when a secret indictment is returned. We hold that exclusion of the public from the instant proceedings in no way vitiated or invalidated the indictment.

The defendant next contends that the indictment was based on taped testimony given to a predecessor grand jury in violation of Rule 6(e) of the Superior Court Rules of Criminal Procedure. Rule 6(e) provides, in pertinent part:

"Disclosure of matters occurring before the grand jury, other than its deliberations or the vote of any juror where an indictment has not been returned, may be made to attorneys for the State for use in the performance of their duties. Otherwise, a juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury only when so directed by the court preliminary to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant * * *"

The defendant argues that this provision permits use of evidence taken before a grand jury to be disclosed to a different grand jury only when directed by the court. He asserts that this interpretation of the rule is particularly warranted in this case because the testimony involved was not live. We do not agree.

■ We are of the opinion that the instant grand jury's use of taped testimony, which had been part of prior grand jury proceedings, did not violate the requirement of secrecy under Rule 6(e). The rule was not designed to prevent the use of taped grand jury evidence in a prosecutorial activity. A grand jury may decide whether the quality of the evidence presented to it is sufficient to warrant the return of an indictment. *State v. Acquisto,* 463 A.2d 122, 127 (R.I.1983). In Rhode Island the rules of evidence that might apply to a trial do not apply to a grand jury. *Id.* We have followed the rule enunciated by the Supreme Court of the United States in *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), in declining to establish "a rule permitting defendants to challenge indictments on the ground that they are not supported by adequate or competent evidence." *Acquisto,* 463 A.2d at 127. We conclude that the grand jury's use of taped testimony given to a predecessor grand jury does not violate Rule 6(e) and is no basis for dismissal of the indictment.

The defendant next asserts that his grand jury indictment was returned by only eleven qualified jurors and not twelve as required by Rule 6(f) of the Superior Court Rules of Criminal Procedure. He argues that one of the jurors, Edmund Lamois (Lamois), was unqualified to serve because he had previously served on a grand jury from July 31, 1989 to August 10, 1989. The defendant contends that under G.L.1956 § 9–10–7, Lamois should not have been called to serve before the expiration of two years following his last service.[1] Lamois was placed on the list for potential service by the jury commissioner in April of 1991, but he was notified at that time that he could not begin service until after August 1991. His service on the instant jury in fact began on September 16, 1991. The defendant contends that the jury commissioner's qualification of Lamois for grand jury service later in August was incorrect and that under § 9–10–7 he should not have been qualified for service prior to the expiration of the two-year period. We do not agree.

■ We are of the opinion that Lamois was a qualified juror on the instant grand jury within the meaning of the statute. On

---

1. General Laws 1956 § 9–10–7 provides:

"No person summoned shall be qualified to serve as a juror, who has served as such within two (2) years next preceding the time when he shall be so summoned; and the court shall, upon calling the person so summoned, inquire of him if he has so served."

the date he was called to serve in defendant's case, he had not served on a jury within the preceding two years. He was thus qualified to serve within the meaning of Rule 6(f). We hold that the fact that Lamois had been placed on a potential juror list in April of 1991, prior to the expiration of the two-year period, is of no consequence in regard to his qualification as a juror when summoned to serve and provides no basis for dismissal of the indictment.

## II

### The Admission of Defendant's Brown University Telephone Records during Jury Deliberations

At the beginning of their deliberations the jurors sent a request to the trial justice for, *inter alia*, records of defendant's office telephone for February 1991. The trial justice noted the large number of exhibits in the case, and asked counsel to make a list of full exhibits available to the jurors in order to assist them in their efforts to locate evidence during deliberations. In the course of preparing the list, a dispute arose concerning Exhibit U for identification, which was a record of calls made from defendant's telephone extension at the Brown University track office for the period February 13 to March 18, 1991. The defendant objected to the trial justice's decision to make Exhibit U available to the jury as a full exhibit, asserting that it had been marked by the defense for identification only during testimony respecting the count of witness intimidation and was therefore not relevant to the jury's determination of the remaining charges. Exhibit U was subsequently given to the jury over defendant's objection.

The defendant argues that the decision of the trial justice to send Exhibit U to the jury was reversible error. He acknowledges that the indictment charges that the second sexual assault of Doe occurred between February 16 and 18, 1991. The defendant asserts, however, that the state's theory at trial was limited to February 16 and 17, 1991, and that he produced alibi evidence with respect to his whereabouts on these two dates save for a period of approximately twenty-five minutes on February 17. The defendant argues that

no evidence was presented at trial concerning his whereabouts on Monday, February 18, except for brief testimony by his mother-in-law that defendant had driven her to the airport on that day, and that the jury should not have been permitted to consider February 18 to be part of the time frame for the alleged second assault. The defendant contends that Exhibit U, which shows that a number of telephone calls originated from his office phone on February 18, could have led the jury to conclude that defendant was on the Brown University campus on February 18 and that he had the opportunity to commit the alleged crime on that date. The defendant further contends that the trial justice's decision to send Exhibit U to the jury as a full exhibit when it had been originally marked for identification purposes only deprived defendant of the opportunity to respond to it. We agree with defendant's contentions.

 A trial justice must exercise discretion regarding the admissibility of evidence when an objection has been made on the ground of relevancy. *Romano v. Ann & Hope Factory Outlet, Inc.*, 417 A.2d 1375, 1379 (R.I.1980). Such a ruling would not constitute reversible error "unless the trial justice abused his discretion to the prejudice of the objecting party." *Id.* In the instant case, defendant's alibi testimony with respect to February 16 and 17, 1991, left a very narrow window of opportunity for defendant to have committed the alleged assault on February 17. As a result, the jury, without further instruction, was precluded from considering any window of opportunity on February 18. Had this exhibit been offered in evidence by the state during the trial proceedings and been admitted over defendant's objection, it would have been possible to redact the calls made on February 18. If that were not feasible, the court could have admonished the jury and counsel could have asserted in oral argument, that the jury should disregard phone calls made on February 18 since the state did not contend that the rape took place on that date. However, since it was offered after deliberations had begun and without redaction, such an instruction was not possible. Consequently,

evidence concerning opportunity for February 18, made available to the jurors after they had begun deliberating without a limiting instruction or an opportunity in argument to point out the lack of relevance of the phone calls on that date was highly prejudicial to defendant. We conclude that the trial justice's admission of defendant's Exhibit U as a full exhibit during jury deliberations was reversible error.

### III

#### The Admission of Testimony respecting the Credibility of a Witness

In the course of trial the jury heard extensive testimony concerning the lack of evidence to corroborate the charges against defendant. Doe testified that she had not reported either of the assaults to the police prior to her complaint in the instant case, nor could she produce any of the letters she alleged defendant had written to her that would have tended to incriminate him. Defense witnesses testified that Doe's behavior toward defendant at the time of the two alleged assaults, and in the intervening year, did not suggest that anything unusual had occurred in their relationship. The defendant's contention at trial was that the charges lodged against him by Doe were of recent fabrication, which contention he supported with testimony concerning Doe's prior statements to the grand jury and to a Providence police officer that she had not told anyone about the alleged first rape. Doe testified that in the summer of 1990, while at home in Hawaii, she told her mother that she had been raped at Brown but did not identify the assailant to her mother at that time. Providence Police Detective Donna Carroll (Detective Carroll) testified for the defense that she had spoken briefly with Doe's mother by telephone in April or May 1991 and that Doe's mother did not say anything to her about having been told by Doe about a rape. The defendant contends that on cross-examination Detective Carroll was next permitted, over defendant's objection, to testify that it was not uncommon for people to neglect fully to elucidate the details of an incident in a report to a police officer:

"Q. In your experience is it uncommon for people to have important information and you have to draw it out of them?

"MR. GONNELLA: I have to object to that, even though you can't see me, Your Honor.

"THE COURT: Overruled. You can answer the question.

"A. It's not at all uncommon.

* * * * * *

"Q. Often people don't know the knowledge they have is important?

"MR. GONNELLA: Objection, Your Honor.

"THE COURT: Let her answer that.

"A. Yes sir; that is true, that sometimes they don't know that things that may not be important—seem that important to them could be very important for me to know."

The defendant argues that Detective Carroll's testimony on cross-examination amounted to vouching for Doe's mother in that it suggested to the jury that the failure of Doe's mother to mention the summer of 1990 conversation with her daughter to the detective should not be viewed as adversely affecting her credibility. We agree.

▮ Determination of the truthfulness or the credibility of witnesses is the exclusive province of a jury. *State v. Haslam,* 663 A.2d 902, 905 (R.I.1995). A witness is therefore not permitted to offer an opinion concerning the truthfulness of the testimony of another witness, even when the opinion given does not literally address another witness's credibility. *Id.* If the opinion testimony has the same "substantive import" as if it squarely addressed and bolstered another witness's credibility, it is inadmissible. *Id.* (citing *State v. Tavares,* 590 A.2d 867, 870–71 (R.I. 1991)).

▮ In the instant case we are of the opinion that Detective Carroll's testimony constituted vouching (supporting the credibility of the mother's testimony) within the meaning of *Haslam* and *Tavares.* In *Tavares,* we cited *Commonwealth v. Montanino,* 409 Mass. 500, 567 N.E.2d 1212 (1991). In that case as in the case at bar defense

counsel elicited testimony from a police officer that disclosed inconsistencies between the victim's trial testimony and the comments made to a police officer in describing an incident of sexual abuse committed by the defendant. *Id.* at 502–05, 567 N.E.2d at 1213–14. On redirect examination the police officer was allowed to testify over the defendant's objection that he had investigated approximately 300 cases involving sexual assault and that most victims "eventually provided more details regarding the assault than they initially revealed." *Id.* at 502–03, 567 N.E.2d at 1213. The Supreme Judicial Court of Massachusetts, in commenting upon the impropriety of allowing such testimony, stated:

> "We think there is little doubt that Saviagno's comments relating to the credibility of 'most' sexual assault victims would be taken by the jury as Saviagno's endorsement of Paul's credibility. As we stated in *Commonwealth v. Ianello, supra,* 401 Mass. at 202, 515 N.E.2d 1181, '[w]hile the proposed testimony fell short of rendering an opinion on the credibility of the specific [witness] before the court, we see little difference in the final result. It would be unrealistic to allow this type of . . . testimony and then expect the jurors to ignore it when evaluating the credibility of the complaining [witness].' " *Id.* at 504, 567 N.E.2d at 1214.

We are persuaded that in the case at bar the admission of Detective Carroll's testimony concerning her experience with witnesses and their tendency not to disclose important elements clearly violates the principles enunciated by the Supreme Judicial Court in *Montanino.* We are further convinced that in this case wherein the quantity and the quality of the evidence were closely balanced and credibility was of paramount importance, the admission of the detective's testimony on this issue would be construed by the jury as endorsement of the mother's credibility. Therefore, we conclude that the decision of the trial justice to admit this testimony was error prejudicial to defendant.

The defendant also contends that the trial justice erred in denying his motion for a new trial and in his instructions to the jury regarding corroboration in sexual-assault cases. In light of our determination of the preceding three issues we do not reach the remaining issues raised by the defendant.

For the reasons stated, we sustain the defendant's appeal of his conviction. The judgment of the Superior Court is vacated. The papers in the case may be remanded to the Superior Court for further proceedings consistent with this opinion.