**STATE**

v.

**Jaimeson RUSHLOW.**

No. 2010–235–C.A.

Supreme Court of Rhode Island.

Nov. 28, 2011.

Janice M. Weisfeld, Office of the Public Defender, Providence, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice INDEGLIA, for the Court.

The defendant, Jaimeson Rushlow, appeals from a judgment of conviction for one count of domestic first-degree sexual assault and one count of domestic assault with intent to commit sexual assault. On appeal, the defendant contends that the trial justice erred by refusing to pass the case after the complainant testified that the police issued to her a no-contact order against the defendant. The defendant also alleges that the trial justice erred by denying a second motion to pass the case when a police officer, while testifying, improperly bolstered the complainant's credibility. This case came before the Supreme Court on October 4, 2011, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the record, the written submissions of the parties, and the oral arguments of counsel, we conclude that this appeal may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

On August 29, 2008, defendant was charged by indictment with domestic burglary in violation of G.L.1956 § 11–8–1 and G.L.1956 § 12–29–5 (count 1); two counts of domestic first-degree sexual assault in violation of G.L.1956 §§ 11–37–2, 11–37–3, and § 12–29–5 (counts 2 and 3); and do-

Lauren S. Zurier, Department of Attorney General, Providence, for State.

mestic assault with intent to commit a sexual assault in violation of G.L.1956 § 11–5–1 and § 12–29–5 (count 4). The charges stemmed from an incident between defendant and the complainant, Ms. Frances Rushlow (Frances)[1] that transpired on the night of June 18, and into the early morning of June 19, 2008. During the trial, the state presented various witnesses, including Frances and the police officers who interviewed Frances and investigated the crime scene. The defendant testified on his own behalf.

The relevant evidence adduced at trial is set forth as follows. The defendant and Frances, a married couple and the parents of two boys, separated in the summer of 2007 but continued to share custody of their children. In June 2008, Frances lived with the couple's young sons in an apartment on Mendon Road in Cumberland. The defendant lived with his brother a short distance away in the same town. At that time, there existed a no-contact order against defendant, issued to Frances, based on an outstanding charge. Although defendant and Frances had been separated for approximately one year, and despite the no-contact order in effect between them, their relationship remained cordial.[2] Because of the shared custody arrangement, the two saw each other fairly regularly when defendant came to Frances's home to pick up and drop off their sons.

At trial, Frances testified that on the night of June 18, 2008, she put the two boys to bed in her own bed and fell asleep next to them while watching television. Sometime in the early morning she was awakened by defendant pulling her off the bed by her arms. She asserted that she had not invited defendant to her apartment and that she did not know how he gained entry. Frances further testified that defendant pulled her, struggling, from the bedroom into the living room and that she made noise in an attempt to wake the boys. According to Frances, after defendant forced her down the hallway and into the living room, he pinned her to the floor and sexually assaulted her. During the course of the struggle, Frances used a lit cigarette to burn defendant. After the assault, which took approximately forty-five minutes, defendant got up and left Frances's apartment.

Finding herself alone in the living room, Frances "cleaned up a little bit," took a shower, and went back to bed. According to Frances, she initially declined to call the police because she was scared, thought it would be "easier" not to involve the police, and "didn't want to make things worse." However, later in the evening of June 19, Frances reported the incident to police and underwent a medical examination at Memorial Hospital in Pawtucket, Rhode Island. Police officers also came to Frances's house that night to investigate the crime scene and to interview her. She was initially interviewed by Lt. Joseph Louro, who subsequent to the interview, assisted in photographing the interior and exterior of the apartment and dusting for fingerprints.

Later that night, the police arrested defendant. Initially, defendant denied being at Frances's apartment or having any sexual contact with her on the evening in question. Sometime later, however, defen-

---

1. Because defendant and Frances share the same last name, we will refer to Frances by her first name to avoid confusion. We intend no disrespect by doing so.

2. Frances testified that defendant would take their boys every weekend. Frances's older daughter (and defendant's stepdaughter), who was no longer living with her, testified that defendant and Frances were "friendly" and without "any animosity."

dant changed his story by acknowledging he was with Frances on the night of June 18 and that any sexual contact was consensual. In defendant's version of events given at trial, he walked by Frances's apartment at approximately 1 a.m. on June 19, noticed a light on, and decided to make an unannounced visit. He testified that both the door to enter the building and the door to the apartment were unlocked. According to defendant, Frances was awake on her bed when he entered the bedroom, and upon his entry she got up and went with him into the kitchen to talk and have some wine. After discussing a job he had just started the day before that involved manually removing and hauling sprinkler pipe, they started kissing. The defendant testified that the kissing progressed until the two "ended up on the [living room] floor" having consensual sex. He denied using any force upon Frances, but he indicated that soon thereafter they began to argue loudly about another woman defendant was dating. After gathering his belongings, defendant left Frances's apartment. The defendant explained that he initially lied to the police about the incident because he feared being found in violation of the existing no-contact order.

At the conclusion of the trial, the jury found defendant guilty of domestic first-degree sexual assault (vaginal-penile penetration) and of domestic assault with intent to commit sexual assault.[3] The trial justice denied defendant's motion for a new trial and sentenced him to thirty-five years, with fifteen years to serve and twenty years suspended, with twenty years probation on the count of first-degree sexual assault. As to the count of assault with intent to commit sexual assault, defendant was sentenced to twenty years, with ten years to serve and ten

years suspended, with ten years probation. The trial justice ordered both sentences to run concurrently. The defendant timely appealed.

## II

### Issues on Appeal

The basis for defendant's appeal is two-fold. First, defendant contends that the trial justice should have passed the case when Frances testified that the no-contact order against defendant had been issued to her by the police. According to defendant, Frances's statement on the witness stand was both improper and unfairly prejudicial because it suggested prior criminal misconduct toward Frances by defendant. Although the trial justice immediately struck the comment from the record and provided a cautionary instruction to the jury, defendant maintains that "the taint [from Frances's] comment was inexpiable," thus requiring the trial justice to pass the case.

Secondly, defendant contends that the trial justice abused her discretion when she denied a second motion to pass the case after Lt. Louro testified that Frances seemed "sincere" when she accused her husband of sexual assault during Lt. Louro's initial police interview. Instead of passing the case, the trial justice admonished the jury to disregard the officer's comment. The defendant argues that because so much of this case rested on the credibility of Frances and defendant, the police officer's testimony bolstered the complainant's credibility and necessitated that the trial justice pass the case. The defendant asserts that the trial justice abused her discretion in denying these motions and asks this Court to reverse his conviction and remand his case to the Superior Court.

---

**3.** The jury returned not-guilty verdicts on both the domestic first-degree sexual assault (anal penetration) and the domestic burglary counts.

## III

### Standard of Review

 "It is well settled that a decision to pass a case and declare a mistrial are matters left to the sound discretion of the trial justice." *State v. Suero*, 721 A.2d 426, 429 (R.I.1998); *see also State v. Lynch*, 19 A.3d 51, 60 (R.I.2011). This Court gives considerable deference to a trial justice's ruling on a motion to pass a case and declare a mistrial because the trial justice has a "front row seat," allowing him or her to "best determine the effect of the improvident remarks upon the jury." *State v. Tempest*, 651 A.2d 1198, 1207 (R.I.1995) (quoting *State v. Pailin*, 114 R.I. 725, 729, 339 A.2d 253, 255 (1975)); *see also State v. Nelson*, 982 A.2d 602, 607 (R.I.2009). As such, the trial justice's determinations regarding the prejudicial effect of evidence and the jury's ability to render a fair and impartial verdict are reviewed by this Court under an abuse-of-discretion standard. *Nelson*, 982 A.2d at 608.

## IV

### Discussion

#### A

#### The No–Contact Order Testimony

 The defendant argues that the trial justice erred in refusing to pass the case when Frances testified that a no-contact order had been issued to her "from the police." Prior to trial, the trial justice summarized to counsel her rulings on various motions *in limine*, one of which addressed the existence of a no-contact order issued to Frances that was based on an outstanding charge against defendant. The trial justice decided to "permit evidence of the no contact order itself without evidence of the charge connected with it." Neither party objected to this ruling.

Frances was the state's first and principal witness. Shortly after commencing direct examination, the prosecutor began questioning Frances about her separation from defendant. At issue is the following line of questioning:

"[PROSECUTOR]: What court order was in effect?

"[FRANCES]: It was a restraining order.

"[PROSECUTOR]: And who had gotten that restraining order?

"[FRANCES]: That was on my behalf. It was issued from the police.

"[PROSECUTOR]: That was on your behalf?

"[FRANCES]: Yes.

" * * *

"[DEFENSE COUNSEL]: I object and move to strike the last half of that—

"THE COURT: Sustained, answer stricken and must be disregarded."

After several more questions and answers, the trial justice gave the jury the following cautionary instruction:

"I'm instructing you that the evidence of a no contact order, if any, does not suggest in any way that the Defendant * * * engaged in any criminal conduct or other misconduct. It cannot be used by you as jurors to suggest that the Defendant engaged in any prior misconduct. You may not draw the inference from the evidence that the Defendant may have committed the crimes with which he's been charged in this proceeding or had the propensity to commit such crimes, and the evidence of the no contact order may only be considered by you potentially as evidence of the relationship of these parties and the Defendant's intent, motive and or state of mind on the date or dates in question with respect to the charges."

Defense counsel immediately requested a sidebar conference and moved to pass the case. At sidebar, defense counsel argued that Frances's statement regarding the police issuance of the no-contact order was akin to "saying the police know him from the neighborhood." In response, the prosecutor insisted that she did not know Frances would make such a statement. After hearing arguments from both sides, the trial justice determined that a further cautionary instruction would cure any problem and declined to pass the case.

After the sidebar conference, the trial justice addressed the jury and clarified that "the no-contact order referenced by this witness was not issued by the police department." At the close of the trial, the trial justice again instructed the jury to ignore any testimony that had been stricken during the course of the trial and emphasized the limited use to which the jury could consider any evidence of defendant's prior misconduct.

In his appeal, defendant argues that the taint of Frances's comment was inexpiable. To support that, defendant points to the trial justice's pretrial ruling prohibiting evidence of the outstanding criminal charge associated with the no-contact order. The defendant asserts that Frances's reference to the police "clearly reverberated throughout [the] courtroom," and the impact of the statement on the jury could not be "unrung" by the trial justice's admonition. In addition, defendant emphasizes how early in the trial the improper testimony was elicited and relies on prior case law from this Court involving the reversal of convictions because of overly prejudicial statements during trial.[4] However, in

light of the circumstances of the case before us, defendant's argument is unavailing.

■■■ In considering a motion to pass occasioned by the accidental introduction of allegedly harmful information at trial, "the trial justice must assess the prejudicial impact" of the information. *State v. Rosario*, 14 A.3d 206, 215 (R.I.2011) (quoting *State v. LaPlante*, 962 A.2d 63, 70 (R.I.2009)). A statement is held to be sufficiently prejudicial when it is "extraneous to the issues before the jury and tend[s] to inflame the passions of the jury." *Rosario*, 14 A.3d at 215 (quoting *State v. Monteiro*, 924 A.2d 784, 792 (R.I. 2007)). Furthermore, rather than using some prescribed formula for determining prejudice, we have observed that "potentially prejudicial evidence must 'be viewed in the context in which it appeared and in light of the attendant circumstances.'" *Rosario*, 14 A.3d at 215 (quoting *LaPlante*, 962 A.2d at 70–71).

Taking into consideration all of the circumstances surrounding Frances's errant statement, we hold that the testimony concerning the no-contact order being issued to Frances by the police was not sufficiently prejudicial as to prevent the jury from calmly and dispassionately considering the evidence. *See Rosario*, 14 A.3d at 216. Indeed, considering the quantity and strength of evidence presented against defendant during the course of the trial, an inaccurate statement regarding the manner in which the no-contact order was issued can hardly be considered inflammatory.[5] The record reflects an abundance

---

4. The defendant cites this Court's holdings in *State v. Gallagher*, 654 A.2d 1206 (R.I.1995); *State v. Ordway*, 619 A.2d 819 (R.I.1992), and *State v. Pugliese*, 117 R.I. 21, 362 A.2d 124 (1976).

5. We distinguish the instant case from *State v. Miller*, 679 A.2d 867, 873 (R.I.1996), in which we concluded that prejudicial error did exist because "the quantity and the quality of the evidence [was] closely balanced * * *."

of evidence presented to the jury that suggested defendant's guilt. For example, defendant initially lied to the police about his whereabouts and actions on the night of the incident. Evidence of defendant's DNA placed him at the scene of the crime and with Frances. Physical evidence of abrasions and bruises on Frances's body corroborated her testimony. The defendant had a noticeable scratch on his body and a burn on his hand—also corroborating Frances's testimony. In addition, Frances's downstairs neighbor testified that he saw defendant on the fire escape outside his window on the night of the incident and that he later heard loud banging and yelling emanating from Frances's apartment above. Finally, while in prison awaiting trial, defendant attempted to prevent Frances from testifying in court by requesting third parties to keep her away from her house so she could not be subpoenaed.

■ In addition to the plentitude of evidence presented by the prosecution, the cautionary instructions provided by the trial justice also alleviated any prejudicial impact of the testimony. The trial justice both corrected Frances's testimony regarding the source of the no-contact order and provided a cautionary instruction to the jury immediately after the comment at issue. She also provided further clarification to the jury after the sidebar conference. At the conclusion of trial, the trial justice again instructed the jury about the proper and limited purpose of such evidence. The trial justice provided these instructions to diminish the prejudicial effect of Frances's statement. In the absence of any indication that the jury failed to obey the cautionary instruction given by the trial justice, we must assume that the jury followed the instructions as given. *State v. Barbosa*, 908 A.2d 1000, 1005 (R.I. 2006); *see also State v. Mendoza*, 889 A.2d 153, 159 (R.I.2005). In this case, there is no indication that the jury failed to obey the cautionary instruction.

Lastly, we emphasize that the jury found defendant not guilty of two of the four crimes with which he was indicted. This verdict suggests that Frances's testimony did not render "the result of inflaming the passions of the jurors to the point where they were unable to pass impartially upon the issues in this case." *State v. Ordway*, 619 A.2d 819, 828 (R.I.1992). Therefore, considering the weight of the prejudicial evidence against defendant, the trial justice's specific and timely cautionary instruction to the jury, and the jury's final verdict, we conclude that the trial justice did not abuse her discretion in denying to pass the case.

**B**

**The Bolstering Testimony**

Next, defendant argues that the trial justice abused her discretion in failing to pass the case when Lt. Louro improperly bolstered Frances's credibility by testifying that she seemed "sincere" when she accused defendant of sexual assault. Lieutenant Louro, a supervisor in the Cumberland Police Department, was dispatched with another officer to Frances's home on June 19, 2008, to investigate the incident. During the prosecution's direct examination of Lt. Louro, he testified about his interview with Frances concerning the sexual assault. At issue is the following question and response:

"[PROSECUTOR]: Could you describe her demeanor at that point in time?

"[LT. LOURO]: She appeared a little nervous, upset and sincere on the issue."

Defense counsel immediately objected to Lt. Louro's response and moved to strike. The trial justice sustained the objection, struck the answer, and instructed the jury

to disregard it. Defense counsel requested a sidebar conference, during which he moved to pass the case. The trial justice declined to pass the case and gave the following cautionary instruction to the jury:

"Members of the Jury, you're instructed as follows with regard to this witness'[s] testimony that I have just stricken: You must entirely disregard it. The witness is not allowed to comment on the credibility of another witness and that is for you to decide based on the testimony in the courtroom."

At the conclusion of trial, and as part of her general jury instructions, the trial justice again cautioned the jury regarding witness bolstering.

On appeal, defendant argues that the main issue for the jury to resolve—whether the sexual intercourse was consensual—depended largely on whether the jury believed Frances or defendant to be more credible. The defendant asserts that this bolstering of Frances's credibility by Lt. Louro necessitated the trial justice to pass the case. We disagree.

 This Court has held that "[t]he determination of the truthfulness or credibility of a witness lies within the exclusive province of the jury." *State v. Adefusika*, 989 A.2d 467, 476 (R.I.2010) (quoting *State v. Haslam*, 663 A.2d 902, 905 (R.I.1995)). Accordingly, "bolstering" (which occurs when one witness offers an opinion pertaining to the accuracy of another witness's testimony) is impermissible. *Adefusika*, 989 A.2d at 476. We consider opinion testimony to be inadmissible bolstering if "the opinion testimony has the same substantive import as if it squarely

addressed and bolstered another witness's credibility * * *." *Id.* (quoting *State v. Miller*, 679 A.2d 867, 872 (R.I.1996)). When this Court determines that specific testimony constitutes impermissible bolstering, our task is then to determine whether the trial justice's decision to admit such improper testimony constituted prejudicial error. *Id.* (citing *Miller*, 679 A.2d at 873).

 Upon undertaking such an analysis, this Court's first step is to determine whether Lt. Louro's statement regarding Frances's sincerity was improper bolstering. To support his argument, defendant relies on our decision in *State v. Lassiter*, where this Court found that a police officer's testimony "squarely addressed and bolstered another witness's credibility." *State v. Lassiter*, 836 A.2d 1096, 1109 (R.I. 2003) (quoting *Miller*, 679 A.2d at 872). Such is the case here. Lieutenant Louro's testimony went beyond just simply addressing how Frances physically appeared during the interview by testifying about his opinion of the veracity of her accusations. Because Frances had already testified as the prosecution's key witness, Lt. Louro's brief comment that she "seemed * * * sincere" improperly bolstered her credibility.[6]

 Having determined that Lt. Louro's comment was improper bolstering, we now examine whether the trial justice abused her discretion by declining to pass the case. Our prior holding in *State v. Higham*, 865 A.2d 1040 (R.I.2004) is instructive. In *Higham*, 865 A.2d at 1041, the defendant appealed his conviction of two counts of first-degree child molestation sexual assault. The defendant argued that the trial justice erred in refusing to

---

**6.** Furthermore, the meaning of "sincere" is virtually synonymous with "truth." *See, e.g.*, The American Heritage Dictionary of the English Language 1624 (4th ed.2006) (defining the word "sincere" as "1. [n]ot feigned or affected; genuine" and "2. [b]eing without hypocrisy or pretense; true").

pass his case after the mother of the victim improperly bolstered the victim's credibility.[7] *Id.* at 1044. The victim's mother, in response to a question about whether the victim had spoken to her recently regarding the molestation, replied, "in counseling." *Id.* After defense counsel objected, arguing that the evidence of counseling suggested a higher probability of the victim's truthfulness, the trial justice sustained the objection and struck the witness's comment from the record. *Id.* The trial justice subsequently denied a motion to pass the case, but did provide the jury with a cautionary instruction. *Id.*

Although we acknowledged in *Higham,* 865 A.2d at 1045, that "much hinged on the issue of the complaining witness's credibility," this Court concluded that the defendant was not prejudiced by only one brief reference to the complaining victim's counseling session. *See id.* No less significant is the fact that in *Higham,* the victim herself took the stand during trial and testified directly about the abuse she suffered at the hands of the defendant. *Id.* at 1046. This Court concluded that the victim's lengthy testimony gave the jury "ample opportunity to form an independent opinion about [the victim's] credibility." *Id.* Based on this reasoning, this Court affirmed the trial justice's decision to deny the motion to pass the case. *Id.*

In the case at hand, Lt. Louro's testimony as to what he perceived as Frances's sincerity was, as in *Higham,* brief and without follow-up. Moreover, as the prosecution's first witness, Frances gave extensive testimony that was subject to substantial cross-examination. As in *Higham,* Frances's testimony provided the jury with "ample opportunity to form an independent opinion" about her credibility. *Higham,* 865 A.2d at 1046. Thus, the brevity of Lt. Louro's remark, the jurors' sufficient opportunity to judge Frances's truthfulness before his remark, and the trial justice's immediate instruction to the jury to disregard his remark[8] are all factors supporting the trial justice in her decision to deny passing the case.

Finally, as discussed *supra,* we incorporate into our analysis the quantity and strength of the evidence presented against the defendant during the course of the trial, as well as the fact that the jury eventually acquitted the defendant on two of the four charges with which he was indicted. Considering the totality of all of these factors, we are persuaded that in this case the improper bolstering of Frances's testimony by Lt. Louro was not sufficiently prejudicial to the defendant. Accordingly, we hold that the trial justice did not abuse her discretion in declining to pass the case.

## V

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior

---

7. In *State v. Higham,* 865 A.2d 1040, 1044 (R.I.2004), we used the term "vouching," rather than "bolstering." While these terms are technically distinct, they are frequently used interchangeably, and it is unnecessary to expound upon the differences here.

8. Similarly, in *State v. Enos,* 21 A.3d 326, 329 (R.I.2011), a police officer intimated the defendant's culpability by testifying that the defendant refused to provide any information after the officer had advised him of his *Miranda* rights. On appeal, this Court held that no abuse of discretion occurred when the trial justice denied passing the case after she provided a cautionary instruction to the jury. *Id.* at 334 (asserting that "any prejudice that may have arisen" from the officer's testimony was "foreclosed by the trial justice's immediate and thorough instruction to the jury").

Court. The record of the case may be remanded to the Superior Court.