362 A.2d 124.

STATE *vs.* CHARLES R. PUGLIESE

AUGUST 4, 1976.

PRESENT: Bevilacqua, C.J., Paolino, Joslin and Kelleher, JJ.

KELLEHER, J. In March 1974 the defendant was indicted for the armed robbery of a milk store. Some 3 months later, in June 1974, a jury trial was held in the Superior Court and a mistrial was declared when the jury was unable to reach a verdict. In the fall of 1974 the defendant was again on trial before another jury on the same charge. This time the jury returned a guilty verdict, and the defendant appeals.

The record indicates that at approximately 6:30 p.m. on Sunday, December 16, 1973, a Dutchland Farms store located at the corner of Union and Webster Avenues in Providence was robbed. A short, stocky man wearing a woman's blond wig and a full-length black coat entered the store, approached the check-out counter, pointed a gun at the sole employee present, and demanded the money in the cash register. A customer, who had followed the robber into the store, was forced to lie on the floor in a rear room. The employee handed the money over to the bandit, who then quickly departed.

The state's witnesses were the employee and the customer. The employee, an 18-year-old college student, in identifying Pugliese as the gunman, conceded that he had

seen the felon's face for a matter of no more than 10 seconds. While the employee insisted that despite the shoulder-length wig the intruder's face was clearly visible, he admitted that except for a small, flat nose the robber's face lacked any distinguishing or unusual features. The witness also reported that he had never seen defendant during the 6-month period he had previously worked at the store.

During cross-examination the employee was confronted with an affidavit he had signed during the preceding summer, some 6 weeks after the mistrial. The affidavit had been prepared by a member of the Public Defender's staff and was executed in the Public Defender's office. In this affidavit the employee asserted that he wished that the robbery charge would be discontinued because he was no longer positive that Pugliese was the individual who had robbed him. The witness attributed his uncertainty to the fact that since the time of the first trial he had seen individuals in his neighborhood who resembled the 1973 gunman.

On redirect examination, when the prosecutor asked him why he had signed the affidavit, the employee responded that he had been to court on at least two or three previous occasions relative to the robbery charge and he was "sick of coming to court." The prosecutor pressed on by asking the witness if anybody had approached him regarding this matter, and the witness replied in the affirmative. He said that "Tony," an individual whom he had never seen before, had dropped by the milk store. When asked if Tony had identified himself, the employee responded: "He said he was Pugliese's friend from up at the A.C.I." The prosecutor responded: "Pugliese's friend?" The witness answered in the affirmative, defense counsel approached the bench, and the jury was excused. In excusing the jurors, the trial justice reminded them to be back in the courthouse by 9:55 a.m. the following morn-

ing. After the jury had departed, defense counsel asked that the case be passed and a mistrial declared. He contended that no cautionary instructions could resuscitate defendant's presumption of innocence and that the jury was now aware that either Pugliese was in prison or had friends there. The prosecutor disagreed and observed that most jurors were sufficiently sophisticated to know that there are persons serving time in prison who are brought to trial on other charges.

The trial justice took a different tack. After alluding to the presence of sheriffs and correctional officers in the courtroom during Pugliese's trial, he remarked: "It seems to me that we are engaged in a running fiction here when we concern ourselves with this kind of observation that * * * the jury must never become aware of the fact that the defendant may be in custody. I think it's probably the expectation of the jury that someone who is accused of a serious crime is generally held for trial, that is the fact of the matter." Concluding that defendant had not been prejudiced by the statement, he denied the motion and, in doing so, observed that the defense counsel should have been aware that the introduction of the statement could have worked to the detriment of his client. This statement prompted a further colloquy between the defense counsel and the trial justice. Finally, the trial justice told defense counsel that he could clear up the question of Tony's status during the recross-examination. The trial justice recessed court for the day, and the trial resumed the following morning.

During recross-examination the employee emphasized that he had not been forced or coerced into going to the Public Defender's office and making the affidavit. However, he admitted that he had not observed other individuals in the neighborhood who resembled the robber. Apparently, his affidavit was based on a fabricated state-

ment designed to avoid the necessity of further court appearances.

After the state rested, the defense presented four witnesses, the thrust of whose testimony was that Pugliese had worked that particular Sunday in December of 1973 from 10 a.m. to 10 p.m. in the shop of a neighborhood used car dealership. According to his witnesses, Pugliese and two others were replacing a defective oil burner which they had unsuccessfully attempted to repair earlier in the day.

Pugliese's objection to the trial justice's refusal to pass the case because of the employee's characterization of Tony would ordinarily fall on deaf ears because preservation of this kind of an issue demands a request for appropriate cautionary instructions. *State* v. *Sawyers,* 116 R. I. 230, 233, 354 A.2d 115, 116 (1976). This rule, however, is subject to the exception that no request is required if to do so would be futile or if the challenged remarks were so prejudicial that a cautionary instruction could not eradicate the prejudice. *State* v. *Pailin,* 114 R. I. 725, 728, 339 A.2d 253, 255 (1975); *State* v. *Plante,* 111 R. I. 386, 391, 302 A.2d 804, 807 (1973). Therefore, when the trial justice found the witness' comment nonprejudicial, a request for cautionary instructions would have been an idle gesture. Consequently, the defense's objection to the denial of its motion to pass is reviewable.

The trial justice's belief that the average juror probably realizes that all defendants charged with serious crimes are incarcerated at the time of trial is a proposition which we cannot endorse. To the contrary, it is just as reasonable to suppose that a juror viewing the members of the sheriff's department or the committing squad in a criminal courtroom believes that their primary purpose is to preserve the degree of decorum one expects to find in such surroundings. The jurors for the most part are novices to

26

our system. For many their 2-week tour of jury duty is a first opportunity to observe the judicial process in operation. When a criminal case is on trial before a jury, every effort is made to insure that both a defendant on bail and an incarcerated defendant appear before the jury in the identical setting.

Although the jurors may have been strangers to the courtroom, they presumably were equipped with a pair of well-tuned ears. The employee's remark concerning Pugliese, his friend and our state prison, the "A.C.I.," was apparently audible and understandable. Certainly, the employee's statement was susceptible of the inference that Pugliese himself was or had been a convicted criminal or that he was friendly with a particular criminal. We believe this reference to the "A.C.I." was irrelevant and prejudicial. The trial justice, however, believing it non-prejudicial, made no effort to disabuse the jurors of its impact.

Whether a particular statement is prejudicial cannot be determined by a fixed formula. Rather, we will evaluate its probable effect upon the outcome of the case by examining the remark in its factual context and determining whether this remark reasonably tended to increase the probable strength of the employee's in-court identification of Pugliese. *See Grelle* v. *Calise,* 111 R. I. 612, 616, 306 A.2d 41, 44 (1973), *citing Heuser* v. *Goldstein,* 107 R. I. 317, 321-22, 267 A.2d 420, 422 (1970); *see also State* v. *Bowden,* 113 R. I. 649, 657, 324 A.2d 631, 637 (1974). Since we are not aware of the tenor and substance of the jury's deliberations, we cannot determine with certainty the impact of this remark on their verdict. We can, however, infer that their decision was very difficult and agonizing. After nearly 5 hours of deliberation the foreman of the jury notified the court in writing that " '* * * as of this hour * * * we cannot make a unanimous deci-

sion one way or the other * * * please advise.' " The trial justice responded by calling them back to the courtroom and urging them to resolve their impasse. Almost an hour later the foreman sent another note to the court, stating: " '[W]e have reached a verdict. God help us. * * *' " After the guilty verdict was returned, the court questioned the foreman about the significance of this notation. In response he explained to the court that "* * * it's [sic] a very tough decision to make with the evidence that was presented to us and I think we searched our souls and our consciences, we found the true verdict. It was very hard."

Reviewing these events in light of the brevity of the eyewitnesses' observation of the robber's face (employee — 10 seconds, customer — 5 seconds) and the limited duration of his presence in the store (30—60 seconds), we believe that there was a reasonable possibility that the employee's reference to the "A.C.I." might have either influenced the decision on or detracted the jurors' attention from the identification issue and was, therefore, prejudicial. *State* v. *Bower,* 109 R. I. 198, 203, 283 A.2d 39, 42 (1971); *see also Tallo* v. *United States,* 344 F.2d 467, 468 (1st Cir. 1965). In our opinion, the ends of justice would be best served if a jury, totally unaware of any reference to Pugliese, his friend, and the Adult Correctional Institutions, were to determine whether at 6:30 p.m. on the Sunday evening in question the defendant was wielding a gun at the Dutchland Farms store or a wrench at the oil burner site.

The defendant's appeal is sustained, the judgment of conviction is vacated, and the case is remitted to the Superior Court for a new trial.

Mr. Justice Doris did not participate.

*Julius C. Michaelson,* Attorney General, *Judith Romney Wegner,* Special Asst. Attorney General, for plaintiff.

*William F. Reilly,* Public Defender, *Bruce Pollock,* Asst. Public Defender, *Benedetto A. Cerilli, Jr.,* Asst. Public Defender, for defendant.