STATE

v.

Tony E. LEMON.

No. 82–403–C.A.

Supreme Court of Rhode Island.

June 5, 1984.

Dennis J. Roberts II, Atty. Gen., David H. Leach, Asst. Atty. Gen., for plaintiff.

Walter R. Stone, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

The defendant, Tony E. Lemon, was charged with six counts of robbery and three counts of assault with a dangerous weapon, all arising out of an alleged robbery at the Firestone Rubber Company on North Main Street in Providence on September 7, 1978. After a jury trial in the Superior Court, the defendant was found guilty on all nine counts set forth in the indictment. He appeals from the judgment of conviction and raises six issues in support of his appeal. We shall deal with these issues under five headings, not in the order in which they are asserted in the defendant's brief, but in an order that corresponds to their significance in respect to our decision in this case. The defendant's appeal is sustained in part, and the case is

remanded to the Superior Court for a new trial. The facts pertinent to this appeal are as follows.

On September 7, 1978, a robbery took place at the Firestone Rubber Company. Two customers and four employees were forced at gunpoint to surrender their personal valuables. One employee was required to turn over the business receipts that were stored in the office. Three men were involved in the robbery. After an investigation, defendant was arrested on October 21, 1978, at approximately 6 a.m. At the time of his arrest, defendant was also suspected of committing a murder that had taken place on August 29, 1978, on Burnside Street in Providence. The victim in this murder was a man named Ulysses "Shorty" Brown.

When defendant was taken to the police station, he was given his *Miranda* admonitions in respect to the murder charge. He signed a statement at approximately 6:38 a.m. on October 21, 1978, waiving his right to counsel and his right to remain silent. He then made a confession admitting that he had shot "Shorty" Brown. Later, after a jury trial, defendant was acquitted of the charge of murder on the bases of alibi testimony and possibly a dying declaration of the victim which had not implicated defendant.

After giving his statement concerning the charge of murder on October 21, 1978, defendant led the police in a search for the murder weapon. When the police had concluded their investigation of the alleged murder, they then took steps on the same day to investigate the robbery and assault charges.

At approximately 11:30 a.m. on October 21, 1978, the police gave *Miranda* admonitions to defendant relating to his right to remain silent and his right to counsel in his capacity as a suspect in the crime of robbery. Lemon signed a waiver-of-rights form which set forth a time of 11:30 a.m., and thereafter gave a statement concerning his participation in the robbery. This statement was admitted at trial after a preliminary hearing outside the presence of the jury, at the conclusion of which the trial justice found the confession to be voluntary. Further facts will be supplied as may be necessary in order to deal with each issue.

## I

## THE VOLUNTARINESS OF THE CONFESSION

The defendant claimed that his confession was elicited by force and coercion and that he had not been afforded his *Miranda* admonitions in respect to the crime of robbery. After hearing the conflicting testimony given by defendant's witnesses and by police witnesses, the trial justice decided that the confession was voluntarily given without force or coercion after defendant had received the admonitions required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In so holding, the trial justice resolved the conflict in testimony and determined that the police witnesses were more credible than defendant's witnesses. He also relied upon the written waiver-of-rights form admittedly signed by defendant as well as his written statement that his confession was given of his own free will without any threats or promises on the part of the Providence police.

■ We have frequently stated that findings of fact underlying the issue of voluntariness will be disturbed on appeal only if they are determined to be clearly erroneous. *State v. Ortiz,* R.I., 448 A.2d 1241, 1245–46 (1982); *State v. Fuentes,* R.I., 433 A.2d 184, 189 (1981); *State v. Carlson,* R.I., 432 A.2d 676, 679 (1981).

■ We recognize that our review of the trial justice's factual findings must be made in light of the general principle that a confession must be found by clear and convincing evidence to be given as a result of the rational and voluntary choice of the defendant in order to be termed voluntary. *State v. Ortiz,* R.I., 448 A.2d at 1245;

*State v. Fuentes,* R.I., 433 A.2d at 189; *State v. Amado,* R.I., 424 A.2d 1057, 1061 (1981). In considering the circumstances surrounding the challenged confession in the instant case, we believe that the trial justice's finding that the confession in respect to the robbery was voluntary and uncoerced was amply supported by the evidence presented despite defense testimony to the contrary. In response to directly conflicting testimony concerning the events surrounding the giving of this confession, the trial justice was required to resolve an issue of credibility. An assessment of credibility of witnesses is a task that lies within the province of the trial justice rather than within that of the appellate court. *State v. Vargas,* R.I., 452 A.2d 310, 312 (1982). On examination, the record of the suppression hearing forms no basis to disturb the trial justice's findings that defendant made a voluntary statement with reference both to the murder and to the robbery.

## II

## THE PHOTOGRAPHIC IDENTIFICATION

■ The defendant challenges on the ground of suggestiveness a photographic identification made by two prosecution witnesses. The trial justice held that the display of eight photographs was not conducted in a suggestive manner conducive to irreparable mistake in identification. He observed, "I find nothing wrong, and I am satisfied that the procedure used by Detective Shone on that occasion was correct."

This finding by the trial justice that there was no unnecessary suggestiveness in the presentation of the photographic display satisfies the first step in the analysis required by *Manson v. Brathwaite,* 432 U.S. 98, 107–14, 97 S.Ct. 2243, 2249–52, 53 L.Ed.2d 140, 149–54 (1977). The findings of the trial justice also respond to the totality of circumstances test for reliability sug-

gested by *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972), normally reserved for situations in which suggestiveness in the out-of-court identification is found to exist. *See Manson,* 432 U.S. at 110–14, 97 S.Ct. at 2250–52, 53 L.Ed.2d at 151–54. No such suggestiveness was found in the instant case.

■ The defendant's contention that the absence of one of the eight photographs (this photograph had been lost or misplaced prior to trial) unconstitutionally curtails his ability effectively to cross-examine identifying witnesses is wholly without merit. The trial justice found that the absence of the eighth photograph was not a crucial element. With that determination we agree.

## III

## THE REFUSAL TO ADMIT THE PRIOR RECORDED TESTIMONY OF A DEFENSE WITNESS ON THE BASIS OF HER UNAVAILABILITY

At the earlier murder trial defendant had presented his sister as an alibi witness. The sister, Mrs. Brenda Oliver, is a resident of Austin, Texas, where she is a member of the bar and serves as an assistant county attorney. At the murder trial she testified that defendant was residing with her and her fiancé in Texas during the period that comprised both the date of the murder and the date of the robbery. The defendant had expected her to attend the second trial and testify concerning his alibi on September 7.

However, during defendant's trial, Mrs. Oliver called the trial justice and informed him that she would be unable to attend the trial on her brother's behalf because of the illness of her two children. On the following Monday an affidavit was sent by mail which corroborated the witness's perceptions concerning her unavailability on account of the illness of her children, aged eighteen months and two months. After considering the affidavit[1] and the circum-

---

1. The trial justice had originally ruled on Friday, March 13, 1981 that insufficient reason had

been presented in order to justify the witness's unavailability to attend the trial. After con-

stances of the witness's alleged inability to attend, the trial justice found, within the framework of the principles enunciated in *State v. Ouimette*, 110 R.I. 747, 298 A.2d 124 (1972), that defendant had failed to show inability of the witness to attend. The trial justice was of the opinion that the witness could come to the trial if she had really wanted to do so since she was married and could have left the children in the care of her husband.

In coming to this conclusion, the trial justice focused on the ability of the witness to attend rather than the ability of defendant to require her attendance. The basic rule in respect to unavailability of a witness was set forth in 5 Wigmore, *Evidence* § 1404 (Chadbourn rev. 1974), to the effect that when a witness is absent from the jurisdiction, it is impossible to compel attendance because the process of the trial court is of no force outside the jurisdiction "and the party desiring his testimony is therefore helpless." This rule was rejected in respect to the prosecutorial authority in *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), with the observation:

"Whatever may have been the accuracy of that theory at one time, it is clear that at the present time increased cooperation between the States themselves and between the States and the Federal Government has largely deprived it of any continuing validity in the criminal law. For example, in the case of a prospective witness currently in federal custody, 28 U.S.C. § 2241(c)(5) gives federal courts the power to issue writs of habeas corpus *ad testificandum* at the request of state prosecutorial authorities. See *Gilmore v. United States*, 129 F.2d 199, 202 (C.A. 10th Cir.1942); *United States v. McGaha*, 205 F.Supp. 949 (D.C.E.D. Tenn.1962). In addition, it is the policy of the United States Bureau of Prisons to permit federal prisoners to testify in state court criminal proceedings pursuant to writs of habeas corpus *ad testifi-*

*candum* issued out of state courts. Cf. *Lawrence v. Willingham*, 373 F.2d 731 (C.A. 10th Cir.1967) (habeas corpus *ad prosequendum* ).

"In this case the state authorities made no effort to avail themselves of either of the above alternative means of seeking to secure Woods' presence at petitioner's trial. The Court of Appeals majority appears to have reasoned that because the State would have had to request an exercise of discretion on the part of federal authorities, it was under no obligation to make any such request. Yet as Judge Aldrich, sitting by designation, pointed out in dissent below, 'the possibility of a refusal is not the equivalent of asking and receiving a rebuff.' [*Barber v. Page* ] 381 F.2d [479] at 481. In short, a witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial. The State made no such effort here, and, so far as this record reveals, the sole reason why Woods was not present to testify in person was because the State did not attempt to seek his presence. The right of confrontation may not be dispensed with so lightly." *Id.* at 723–25, 88 S.Ct. at 1321–22, 20 L.Ed.2d at 259–60.

It should be noted that the foregoing comments placed an obligation upon the federal government or the state to make a good-faith effort to require the attendance of a witness before the right of confrontation could be foregone. In the case at bar, there was no indication that defendant, within the time frame available, had any means at his disposal to force the attendance of his sister at trial. It is true that G.L.1956 (1981 Reenactment) §§ 12–16–1 through 12–16–13 provides for the rendition of witnesses from another state

sidering the affidavit which arrived the following Monday, the court declined to modify this ruling.

to testify in criminal cases. Assuming, without deciding, that Texas has enacted a statute in accordance with this uniform law, it would nevertheless seem impossible for defendant to have activated this statutory procedure in time to complete his presentation of evidence within any reasonable continuance that might have been granted. Therefore, for all practical purposes, this witness was unavailable to defendant. Whether she might have come if she was willing to make the necessary sacrifice was not the test. The test should have been whether defendant, by any means at his disposal, could have compelled his sister's attendance at the trial in the face of her refusal to do so voluntarily. We are of the opinion that the trial justice erred in focusing his attention upon the ability of the witness to attend as opposed to the ability of defendant to secure her attendance. This witness was crucial to the establishment of defendant's alibi defense, even though defendant did present some testimony, including his own, concerning his absence from the state during the period when this crime was committed. Nevertheless, none of the witnesses apart from defendant could offer direct testimony concerning defendant's presence in Texas save the absent sister. Thus, this error was prejudicial to the presentation of the defense. It does not appear from the record that any continuances that might have been requested within the framework of an ongoing jury trial could have cured this condition of unavailability.

## IV

### THE DISCOVERY ISSUE

The defendant challenges the failure of the state to give notice pursuant to the provisions of Rule 16 of the Superior Court Rules of Criminal Procedure concerning a witness who was presented in rebuttal. Assuming, without deciding, that the state had an obligation to give more notice than was actually furnished, extensive discussion of this issue is not required since at a retrial defendant will be aware of the possibility that this witness will be presented. Consequently, the discovery issue is mooted by the order of a new trial.

## V

### THE CHALLENGE TO THE INFLAMMATORY REMARK AND THE PRECLUSION OF DEFENDANT'S OFFER OF A DYING DECLARATION IN RESPONSE

The state presented in rebuttal to defendant's alibi defense a witness named Vicky Brown. This witness was the sister of "Shorty" Brown of whose murder defendant had been acquitted. Vicky Brown testified that she had seen defendant in Providence at a time when according to his alibi testimony he was in Texas. During the cross-examination the following exchange took place in respect to this witness:

"Q. Is it fair to say you would do anything before this court and jury to see Tony Lemon convicted?

"MR. LEACH: Objection.

"THE COURT: I will allow it. Answer the question.

"THE WITNESS: I rather see justice done. It wasn't done with my brother getting killed, that he killed my brother. I'd rather see him walk around here and keep on going to—why not do his time?"

In response to this question, no motion to strike was made by defendant and no cautionary instruction was requested.

It is undisputed that representatives of the state had admonished this witness not to mention her brother's murder in any way. It was the ruling of the trial justice that this prejudicial statement was elicited by the zealous cross-examination and tended to show the witness's bias toward defendant.

Thereafter, defendant sought to introduce in surrebuttal witnesses who would testify to a dying declaration on the part of "Shorty" Brown which had not implicated defendant as one who had participated in

his murder. When this request was denied, defendant moved to pass the case. This request was also denied.

 There seems no question that the statement concerning the killing of the witness's brother was highly prejudicial. Ordinarily, in such a situation we would consider the issue to have been preserved on appeal only in the event that a request for an appropriate cautionary instruction had been made. *State v. Anil*, R.I., 417 A.2d 1367, 1373 (1980); *State v. Pugliese*, 117 R.I. 21, 25, 362 A.2d 124, 126 (1976). Absent a timely request for cautionary instructions, this court would grant relief by a new trial only if it was determined that such request for cautionary instruction would have been futile or any attempt to palliate the prejudice would have been ineffective. *State v. Anil*, R.I., 417 A.2d at 1373; *see State v. Pailin*, 114 R.I. 725, 728, 339 A.2d 253, 255 (1975).

We are not convinced that a cautionary instruction indicating that the defendant had been acquitted by a jury of the crime to which the witness had adverted would not have sufficiently blunted the prejudicial comment so that the effect would have been substantially palliated. In any event, since the case is to be retried, it is to be hoped that the same prejudicial comment will not be repeated. The fact should also not be overlooked that this statement was elicited on cross-examination, although we recognize the difficulties encountered by counsel for the defense in probing the issue of bias without touching upon the reason for such bias. However, we cannot say that a witness who has relevant testimony to offer on the issue of alibi should not be presented merely because cross-examination may be difficult.

For the reasons stated, the defendant's appeal is sustained in part and the conviction is vacated. The papers in the case may be remanded to the Superior Court for a new trial.