STATE

v.

James COOK.

No. 2010–363–C.A.

Supreme Court of Rhode Island.

July 6, 2012.

Aaron L. Weisman, Department of Attorney General, Providence, for State.

Lara E. Montecalvo, Office of the Public Defender, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice INDEGLIA, for the Court.

At the end of a trial held in Kent County Superior Court, a jury found the defendant, James Cook (defendant or Cook), guilty of twenty-two counts ranging from first-degree sexual assault to identity fraud. On appeal, Cook contends that the trial justice committed reversible error in denying his motion for a mistrial after the jury heard testimony that he had been on probation and also in admitting evidence of other prior sexual misconduct. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

### I

### Facts and Travel

For purposes of this appeal, a precise recital of the sordid details regarding the various criminal acts committed by defendant is not necessary, nor is it necessary that we name the witnesses or victims in the course of this opinion. We will there-

fore use pseudonyms in all instances, except for defendant.

In early June 2008, two of Cook's relatives informed the Warwick police that Cook had been unlawfully selling prescription drugs to one of them for approximately one year. After two controlled purchases of prescription drugs from Cook, the police obtained a warrant authorizing the search of his home, person, and vehicle for drugs and other evidence related to his suspected possession of narcotics with intent to deliver. On June 9, 2008, the police executed the search warrant and seized sizable quantities of prescription drugs from Cook's bedroom. During their search, the police observed materials that led them to apply for, and secure, a second search warrant to search Cook's home for evidence of child pornography.[1]

The execution of this second search warrant uncovered sexually explicit materials stored on "62 eight millimeter tapes, 123 VHS tapes, 76 CDs, and 12 floppy disks." In reviewing these materials, the police discovered images and a video recording of Cook performing sex acts upon seventeen-year-old Victor, while Victor appeared to be asleep in Cook's bed. The police also discovered images and a video recording showing Cook sexually touching another seventeen-year-old, Whitney, while she appeared to be asleep in a bed at defendant's residence. Subsequently, the police approached Victor and Whitney separately and showed them the seized materials that involved each of them. Victor and Whitney responded with "surprise" and "shock[,]" respectively.

On May 13, 2009, Cook was charged by indictment with having committed unlawful delivery of a controlled substance in violation of G.L.1956 § 21–28–4.01(a)(4)(ii) (counts 1 and 2); unlawful possession of a controlled substance with the intent to deliver in violation of § 21–28–4.01(a)(4)(ii) (count 3); second-degree sexual assault in violation of G.L.1956 §§ 11–37–4(1) and 11–37–5 (counts 4–9, 14–15, 21, 25–31); first-degree sexual assault in violation of G.L.1956 §§ 11–37–2(1) and 11–37–3 (counts 10–13, 16–20, 22–24); knowingly possessing with the intent to use unlawfully or transfer unlawfully five or more identification documents in violation of G.L. 1956 § 11–49.1–3(a)(3) (count 32); knowingly using with the intent to defraud, without lawful authority, a means of identification, with the intent to obtain property under false pretenses in violation of G.L. 1956 § 11–41–4 or § 11–41–6, respectively, and § 11–49.1–3(a)(7) (counts 33–36); conspiring to commit an abominable and detestable crime against nature in violation of G.L.1956 § 11–1–6 (count 37); and committing an abominable and detestable crime against nature with a dog in violation of G.L.1956 § 11–10–1 (count 38). The indictment named Victor and Whitney as the two named complainants of the alleged sexual assaults.

On March 1, 2010, during an interlude in the empanelment of the jury, the state dismissed counts 4–9, 14–15, 21, and 25–31 of the original indictment, all of which involved second-degree sexual assaults, pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure. The state dismissed these counts because of a concern that each count fell outside the statute of limitations for second-degree sexual assault. See G.L.1956 § 12–12–17.

That same day, the state petitioned the trial justice to allow certain evidence pertaining to the assault on Whitney to be

---

1. As made clear to the jury by the trial justice, defendant was ultimately not charged with any crime involving child pornography.

admitted in the state's case against Cook as to the remaining sexual assault counts based on Rule 404(b) of the Rhode Island Rules of Evidence. Specifically, the state requested that the court allow Whitney to testify before the jury and admit into evidence a video recording showing Cook's sexual assault of her.

After hearing statements from both state and defense counsel, the trial justice recessed the trial for the day and viewed the video recording. When the proceedings resumed the next day, the state filed a written motion in support of its request to admit the evidence, and the trial justice again heard arguments from counsel. The trial justice granted the state's motion with the assurance that the court would "admonish the jury as to the limited purpose for which the evidence [was] being introduced[,]" and invited defendant to suggest possible language in that regard.

After a seven-day trial, the jury returned guilty verdicts on all remaining counts. The trial justice denied Cook's motion for a new trial and on June 4, 2010, sentenced him to multiple concurrent terms of life imprisonment for the sexual-assault counts, plus a number of concurrent and consecutive sentences for the remaining counts, resulting in a cumulative sentence of life imprisonment plus seven years consecutive thereto. The defendant timely appealed.

## II

### Issues on Appeal

The defendant's appeal is two-fold. First, Cook argues that the trial justice should have passed the case after a witness mentioned in his testimony before the jury that Cook "was on probation." According to Cook, the witness's statement was not only irrelevant, but also unfairly prejudicial. Although the trial justice struck the testimony, gave a cautionary instruction to the jury, and conducted an individual *voir dire* of each juror, Cook avers that these actions were "not sufficient to dispel the prejudice" caused by the disputed testimony.

Secondly, Cook contends that the trial justice committed reversible error by permitting Whitney to testify before the jury about a number of touchings perpetrated by Cook and by permitting the jury to view a video purporting to be a recording of the alleged touchings perpetrated on Whitney. Cook maintains that the presentation of this evidence was unfairly prejudicial on two bases. He first argues that, under evidentiary Rule 403 of the Rhode Island Rules of Evidence, the evidence involving Whitney should have been excluded because of "its potential to mislead, confuse and unfairly prejudice the jury." Further, as many of the underlying charges against him were sex offenses, Cook asserts that it was error to admit the evidence involving Whitney because it was "superfluous" and not reasonably necessary, therefore requiring this Court to reverse his conviction and remand for a new trial.

## III

### Standard of Review

"It is well settled that a decision to pass a case and declare a mistrial are matters left to the sound discretion of the trial justice." *State v. Rushlow*, 32 A.3d 892, 896 (R.I.2011) (quoting *State v. Suero*, 721 A.2d 426, 429 (R.I.1998)). "This Court gives considerable deference to a trial justice's ruling on a motion to pass a case and declare a mistrial because the trial justice has a 'front row seat,' allowing him or her to 'best determine the effect of the improvident remarks upon the jury.'" *Id.* (quoting *State v. Tempest*, 651 A.2d 1198, 1207 (R.I.1995)). "As such, the trial justice's

determinations regarding the prejudicial effect of evidence and the jury's ability to render a fair and impartial verdict are reviewed by this Court under an abuse-of-discretion standard." *Id.* (citing *State v. Nelson*, 982 A.2d 602, 608 (R.I.2009)).

■ It is also well established that a decision concerning "the 'admissibility of evidence is a question addressed to the sound discretion of the trial justice and will not be disturbed on appeal absent a clear abuse of that discretion.'" *Ims v. Town of Portsmouth*, 32 A.3d 914, 926 (R.I.2011) (quoting *State v. Mann*, 889 A.2d 164, 166 (R.I.2005)). "It should be recalled that this Court is 'disinclined to perceive an abuse of discretion so long as the record contains some grounds for supporting the trial justice's decision * * *.'" *State v. Moreno*, 996 A.2d 673, 678 (R.I. 2010) (quoting *State v. Pitts*, 990 A.2d 185, 189–90 (R.I.2010)).

## IV

## Discussion

### A

### Testimony About Defendant's Probation

■ Cook argues that the trial justice committed reversible error in failing to pass the case after a witness testified that Cook had been on probation. During its case-in-chief, the state called Patrick,[2] a cohort of Cook, to testify about his participation with Cook concerning the charges relating to the abominable and detestable crimes against nature. Patrick testified that he first met Cook in April 2008, when he was a junior in high school. According to Patrick, their relationship progressed, and he later met with Cook on more than

one occasion to engage in sexual activity. At the conclusion of one of these meetings, Cook purchased alcohol for Patrick, which he later consumed, causing him to go to the hospital for alcohol poisoning. Patrick was later "kicked out" of school because of this alcohol use. Thereafter, Patrick communicated to Cook what had happened to him. At issue is the following dialogue that occurred during direct examination by the state prosecutor in regard to that discussion:

> "[THE PROSECUTOR]: What, if anything, did the defendant tell you or say to you after you told him about what had happened to you?
>
> "[PATRICK]: He had told me to not mention his name to anyone including the police [because] he was on probation."

The trial justice immediately requested a sidebar conference to discuss the preceding testimony. After determining that the remark was included in Patrick's witness statement, the trial justice excused the jury. Cook then moved to pass the case, arguing that he was prejudiced by the remark and that even a cautionary instruction to the jury would be an inadequate remedy. The state objected and asserted that based on the totality of the evidence presented against Cook, the statement about his probation was not sufficiently "prejudicial as to deprive * * * defendant of his due process rights in [his] trial." After hearing arguments from both sides, the trial justice determined that a cautionary instruction would properly cure the offending comment, and he declined to pass the case. He then invited Cook to suggest language to be used in a cautionary instruction to the jury.

---

**2.** Apparently, Patrick was granted immunity by the state in exchange for his testimony against defendant.

After a recess, during which counsel for both sides met with the trial justice in his chambers, the parties accepted the trial justice's offer to individually *voir dire* each member of the jury to determine "whether or not they heard what the witness stated in response to the question, [and] if they heard what the witness said, if they can agree to put that out of their mind and not consider that during their deliberations." The trial justice then asked defense counsel whether there was anything else the defense would have the trial justice inquire of the jurors. In response, the defense requested that the trial justice determine whether each juror "know[s] what probation is * * * without telling them[,]" to which the trial justice agreed.

The trial justice then conducted an individual *voir dire* of each juror. Of the fifteen jurors questioned, eight indicated they could not recollect the testimony in dispute. Of the seven who remembered to some degree the response of Patrick, six were confident that they could put that testimony out of their minds.

After the conclusion of this extensive *voir dire,* Cook renewed his motion to pass the case. After additional argument from both parties, the trial justice again denied Cook's motion. However, the trial justice did agree with Cook's subsequent request to excuse the single juror who expressed concern as to whether she could disregard defendant's probationary status. After the trial justice brought the remaining jurors back into the courtroom, he struck the offending testimony and gave the following cautionary instruction to the entire panel:

"Ladies and gentlemen, before [defense counsel] commences his cross-examination of [Patrick], the [c]ourt will instruct all of the jurors to disregard the last answer that was given by [Patrick] to the question posed by [the prosecutor]. The [c]ourt will further order that [the] answer be stricken from the record in this matter; and, once again, the jurors cannot, to the extent that they may * * * recall what [Patrick] said, cannot use that in any respect during your deliberations in this matter."

Finally, at the close of trial, the trial justice further instructed the jury that "any testimony that was ordered stricken by the [c]ourt must be entirely disregarded during your deliberations."

On appeal, Cook argues that Patrick's testimony about Cook's probation was so detrimental that the individual questioning of the jurors and the cautionary instructions given were "not sufficient to dispel the prejudice to the defense." In his argument, Cook refers to how the prosecutor, on direct examination of Patrick, elicited prejudicial testimony that gave an "unfair advantage [to] the state[.]" Cook also relies on prior case law from this Court involving the reversal of convictions because of overly prejudicial statements made during trial.[3] However, in light of the circumstances of the case before us, defendant's argument is unavailing.

In considering a motion to pass a case induced by the unintentional introduction of allegedly damaging testimony at trial, "the trial justice must assess the prejudicial impact" of the information. *State v. Rosario,* 14 A.3d 206, 215 (R.I. 2011) (quoting *State v. LaPlante,* 962 A.2d 63, 70 (R.I.2009)). A statement is sufficiently prejudicial when it is extraneous to the issues before the jury and tends to inflame the passions of the jury. *LaPlante,* 962 A.2d at 70 (citing *State v. Pacheco,* 763

**3.** The defendant cites this Court's holdings in *State v. Gallagher,* 654 A.2d 1206 (R.I.1995); *State v. Ordway,* 619 A.2d 819 (R.I.1992); and *State v. Pugliese,* 117 R.I. 21, 362 A.2d 124 (1976).

A.2d 971, 979 (R.I.2001)). We have held that rather than using some prescribed formula in ascertaining prejudice, "potentially prejudicial evidence must be 'viewed in the context in which it appeared and in light of the attendant circumstances.'" *Rosario*, 14 A.3d at 215 (quoting *LaPlante*, 962 A.2d at 70–71).

In view of the circumstances surrounding Patrick's errant statement, we hold that his testimony concerning defendant's being on probation was not sufficiently prejudicial to prevent the jury from calmly and dispassionately considering the evidence. Indeed, this Court is satisfied that the trial justice's prompt and deliberate actions following Patrick's testimony sufficiently nullified any prejudicial effects it may have caused.

First, after halting the questioning and dismissing the jury, the trial justice invited Cook to suggest language to be used to caution the jury, which Cook later provided. More significantly, the trial justice took the additional precaution to conduct a thorough and searching *voir dire* of each juror. For each juror who was able to recall Patrick's reference to defendant's probation, the trial justice specifically asked the juror if he or she would be capable of putting that statement out of his or her mind during deliberations. All but one juror assured him that they could do so, and that juror was excused. The trial justice also gave defendant an opportunity to ask each juror any additional questions.

Moreover, when the trial resumed, the trial justice struck the offending testimony, cautioned the jury to disregard it, and reemphasized to the jurors that "to the extent that they may have recall[ed] what [Patrick] said," the jury could not use the testimony "in any respect during [their] deliberations[.]" At the end of trial, the trial justice again admonished the jury not to consider any stricken testimony in their deliberations. Unless there is some reason to believe that the jury disregarded the cautionary instructions given by the trial justice, we assume that the jury followed the instructions as given. *See State v. Barbosa*, 908 A.2d 1000, 1005 (R.I.2006); *see also State v. Mendoza*, 889 A.2d 153, 159 (R.I.2005). In the case at bar, there is no indication that the jury failed to obey the cautionary instructions. Therefore, considering the trial justice's comprehensive *voir dire* of the jury, in connection with the timely cautionary instructions to the jury, we find no clear error committed by the trial justice in refusing to pass the case.

## B

## Evidence of Uncharged Sexual Misconduct

Next, Cook contends that the trial justice committed reversible error when he granted the state's motion, made pursuant to Rule 404(b), to admit certain evidence regarding Cook's assault of Whitney. This evidence was presented to the jury in the form of Whitney's personal testimony, as well as images and a video recording showing Whitney asleep in bed in various states of undress while defendant touched her in a sexual manner. The defendant provides two grounds explaining why, in his view, the trial justice's decision in this regard was erroneous. We will address both contentions in turn.

### 1

### Rule 403

 On appeal, Cook argues that under Rule 403, the evidence of his sexual misconduct with Whitney should have been excluded. Rule 403 provides as follows:

"Although relevant, evidence may be excluded if its probative value is substan-

tially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

As a preliminary matter, we first consider whether this issue is properly before this Court on appeal, or if Cook waived this argument by failing to sufficiently cite to Rule 403 in his objection to the proposed admission of the evidence at trial. It is well settled that "[a]llegations of error committed at trial are considered waived if they were not effectively raised at trial, despite their articulation at the appellate level." *State v. Merced*, 933 A.2d 172, 174 (R.I.2007) (quoting *State v. Toole*, 640 A.2d 965, 973 (R.I.1994)). This Court has held that "alleged errors 'not specifically objected to at trial—that is, by an objection that is sufficiently focused so as to call the trial justice's attention to the basis for said objection—are not preserved for consideration by this [C]ourt on appeal.'" *Id.* (quoting *State v. Brown*, 709 A.2d 465, 477 (R.I.1998)). Indeed, we reaffirm "that, in order to satisfy the strictures of our 'raise-or-waive' rule, an evidentiary objection must be 'sufficiently focused so as to call the trial justice's attention to the basis for said objection * * *.'" *State v. Diefenderfer*, 970 A.2d 12, 30 (R.I.2009) (quoting *State v. Warren*, 624 A.2d 841, 842 (R.I. 1993)).

In regard to the motion to admit Whitney's testimony and associated visual evidence, our examination of the record reveals that Cook failed to raise a Rule 403 argument in his objection sufficient to preserve the objection on appeal. Rather, the record indicates that both parties addressed the state's motion to admit the evidence only within the confines of Rule 404(b).[4] In its written motion, entitled "State's Motion to Admit Rule 404(b) Evidence[,]" the state proffered two justifications for admitting defendant's prior sexual misconduct into evidence. First, the state argued that the evidence "would show the defendant's plan or modus operandi * * * or common scheme * * *." The state also asserted that the evidence would negate the defense of consent.

In response, Cook never raised Rule 403 as a basis for his objection. Rather, he objected to the motion by distinguishing the sexual contact that he had with Whitney from the contact he allegedly had with Victor. He emphasized that Victor had previously consented to defendant's sexual overtures on multiple occasions, while the sexual misconduct involving Whitney was only a "one-time incident[.]" He further asserted that his sexual misconduct with Whitney did not fit "the classic common plan, scheme and design." The closest Cook came to raising a Rule 403 argument was his statement that "the prejudicial value" of the proposed evidence to be admitted "far outweighs its probative value as to proving a common plan, scheme and design because of [Victor's case] being replete with admitted consensual encounters on numerous occasions and in [Whitney's] case[,] this one tape[.]" Although Cook used some language that is common to Rule 403, it was nested within a larger Rule 404(b) argument and failed to pre-

---

4. Rule 404(b) of the Rhode Island Rules of Evidence, entitled *"Other Crimes, Wrongs, or Acts,"* reads:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable."

serve his right to appeal based on a violation of Rule 403. Not until the case was before this Court did Cook articulate a Rule 403 argument against admitting the evidence. Thus, the trial justice was never apprised of Cook's contention that the evidence should have been excluded under that rule. As this Court has held, it is not a requirement for a trial justice to consider grounds that were not brought to his or her attention by counsel. *See Diefenderfer*, 970 A.2d at 30.[5] Accordingly, under our established raise-or-waive rule, Cook is not entitled to pursue this issue on appeal.[6]

We note that Cook relies on our holding in *State v. Gaspar*, 982 A.2d 140, 149 (R.I. 2009), a sexual-assault case, in which this Court held that the trial justice committed reversible error by admitting evidence of the defendant's prior sexual activity. Here, defendant attempts to draw out of this Court's holding in *Gaspar* a rule requiring a trial justice, *sua sponte*, to perform a separate Rule 403 analysis whenever he or she is faced with a Rule 404(b) motion. Although our opinion in *Gaspar*, 982 A.2d at 148, does state, and we reaffirm here, that "Rule 403 cuts across the rules of evidence and is always a consideration in a trial justice's ruling on the admissibility of Rule 404(b) evidence[,]" our prior holding does not go so far as to require a trial justice to perform a separate Rule 403 analysis when no objection based on Rule 403 has been articulated before him or her. Accordingly, we decline to institute such a mandate.

█ Assuming *arguendo* that Cook's objection did preserve his right to appeal

the trial justice's decision on Rule 403 grounds, we nevertheless hold that the admitted evidence of his past sexual misconduct was not unfairly prejudicial to him. In *Gaspar*, 982 A.2d at 149, we held that the evidence of a defendant's prior sexual activity admitted in that case was unfairly prejudicial because it "was very likely to confuse the jury and invite an emotional response." However, we also emphasized in *Gaspar* that "because most evidence offered at trial is inherently prejudicial * * * [o]nly *unfairly* prejudicial evidence is barred under Rule 403[.]" *Gaspar*, 982 A.2d at 148–49 n. 12. In the case at bar, the evidence of Cook's sexual misconduct with Whitney, while prejudicial, was not so unfairly prejudicial that Rule 403 would require its exclusion.

First, a review of the record indicates that, although the sexual-misconduct evidence involving Whitney was inherently offensive and criminal in nature, its inflammatory character was diminished when considered in context with the other evidence, admitted at trial, that the jury observed beforehand. Prior to the presentation of the evidence in dispute, the state presented evidence of Cook's first-degree sexually assaultive acts committed upon Victor, who at the time of the assault appeared asleep and unaware. This evidence included photographs and a video recording of Cook committing digital penetration, fellatio, and other sexual acts upon Victor. Additionally, prior to the presentation of the disputed evidence, the state introduced evidence of Cook's alleged commission of an abominable and detesta-

---

5. Moreover, Rule 103(a) of the Rhode Island Rules of Evidence provides in pertinent part: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and "(1) * * * In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context * * *."

6. We also note that Cook did not file a reply brief in response to the state's assertion that he waived this claim.

ble crime against nature, which evidence included Patrick's testimony, photographs, and recorded video depicting Cook's participation in sexual activity with a dog.

In comparison, the disputed evidence involving Whitney consisted of unconsented sexual touchings, rather than actual penetration, as had occurred with Victor. In exercising our deferential standard of review, this Court is satisfied that the admittance of the disputed evidence of second-degree assaultive acts by Cook did not confuse or mislead the jury, or otherwise unfairly prejudice him. Indeed, considering the nature of the evidence that the jurors were required to observe prior to the introduction of the contested evidence, the presentation of evidence concerning his prior sexual misconduct with Whitney could not have heightened any greater "sense of horror" in the jurors than what had already been aroused from the previously-admitted evidence. *See Gaspar*, 982 A.2d at 149 n. 12 (quoting 29 Am.Jur.2d *Evidence* § 338 at 360 (2008)).

Moreover, more than once during Whitney's testimony, the trial justice gave a proper jury instruction with respect to the appropriate use the jury could make of her testimony. The trial justice also gave a limiting instruction to the jury prior to its viewing of the video recording of Cook's sexual misconduct with Whitney. Also, the trial justice showed due consideration in his decision by waiting to rule on the motion until after personally viewing the video recording himself. Accordingly, even assuming that Cook preserved his Rule 403 argument on appeal, this Court concludes that the trial justice did not commit reversible error in admitting the prior sexual misconduct of defendant.

## 2

### Rule 404(b)—Reasonable Necessity

■ As to Rule 404(b), defendant also avers that the evidence involving Whitney was "superfluous" and "not reasonably necessary," therefore requiring this Court to reverse his convictions and remand for a new trial. The defendant supports this argument by citing this Court's previous holdings that in sex offense cases, because of the potential of prejudice, evidence of other misconduct must be used sparingly by the state and only when reasonably necessary. *State v. Tobin*, 602 A.2d 528, 531, 532 (R.I.1992); *see also State v. Pule*, 453 A.2d 1095, 1098 n. 2 (R.I.1982). We hold that, based on the facts in the case at bar, the evidence of Cook's sexual misconduct involving Whitney was reasonably necessary to contradict the defense that Victor consented to the sexual contact Cook was charged with committing.[7]

A fair reading of the trial transcript reveals that one of Cook's primary arguments before the jury was that Victor consented to the sexual relations with him. In admitting the disputed evidence, the trial justice, at least in part, based his reasoning on the state's need to rebut Cook's defense of consent. The trial justice stated in pertinent part:

"The defendant has suggested that * * * the conduct between him and [Victor] was consensual. The defendant suggests that the videos shown and viewed by the [c]ourt * * * suggests that there was consensual conduct and the defendant will have the right to argue that. And the question of consent raises the issue of whether or not * * *

---

7. In *State v. Lamoureux*, 623 A.2d 9, 13 (R.I. 1993), this Court stated that "[a]lthough Rule 404(b) does not list consent as an exception to the inadmissibility of evidence of prior crimes, the issue of consent in a sexual-assault case is closely related to the exception 'absence of mistake' set forth in Rule 404(b)."

Cook was mistaken or whether there was an accident in his taking the actions that were charged by the [g]rand [j]ury. And under Rule 404(b) the [s]tate is entitled to introduce relevant evidence which * * * would allow them to argue that there was no mistake in actions which the defendant took, that the evidence concerning [Whitney] and [Victor] show a general motive of the defendant to provide * * * controlled substances * * * to both [Victor] and to [Whitney] so that he could commit the acts upon them."

At the close of trial, the trial justice charged the jury that the state was required to prove beyond a reasonable doubt that Victor had not given his consent to being sexually touched while asleep.[8] Accordingly, we hold that evidence of the defendant's prior sexual misconduct was reasonably necessary to rebut Cook's defense of consent and therefore, the trial justice did not abuse his discretion in admitting it.

## V

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record of the case may be remanded to the Superior Court.

8. Specifically, the trial justice instructed the jury:
 "If [Victor] voluntarily consented to any of the acts or actions at issue here, or if the defendant reasonably believed [Victor] was consenting, the crimes of sexual assault have not been committed and you cannot find the defendant guilty of these offenses. In order to prove the defendant guilty of first[-]degree sexual assault, the [s]tate must prove beyond a reasonable doubt that * * * Cook did not reasonably believe that [Victor] consented to the sexual acts. The focus here is on the reasonableness of the defendant's belief.
 "The consent may be expressed in words, or [Victor's] actions or inactions may have implied consent. However, the reasonableness of * * * Cook's belief that consent has been given either explicitly or implicitly must be determined from all of the facts and circumstances present at the time that * * * Cook claims that consent was given.
 "Where there otherwise is some evidence of consent, the [s]tate must prove to you beyond a reasonable doubt that the alleged victim * * * did not consent to the acts in question or that the consent was not voluntary. If the [s]tate fails to prove that to you beyond a reasonable doubt, you must find that the defendant is not guilty."