November 18, 2021

**Supreme Court**

No. 2020-53-C.A.
(P1/16-3254A)

State                    :

v.                    :

Robert P. Barboza.                    :

NOTICE:    This opinion is subject to formal revision
before publication in the Rhode Island Reporter.  Readers
are requested to notify the Opinion Analyst, Supreme
Court of Rhode Island, 250 Benefit Street, Providence,
Rhode Island 02903, at Telephone (401) 222-3258 or
Email:    opinionanalyst@courts.ri.gov,    of    any
typographical  or  other  formal  errors  in  order  that
corrections may be made before the opinion is published.

State                          :

v.                             :

Robert P. Barboza.             :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  This case came before the Supreme Court on October 5, 2021, on appeal by the defendant, Robert P. Barboza (defendant or Barboza), from a Superior Court judgment of conviction for second-degree child molestation sexual assault.  The defendant was sentenced to thirty years at the Adult Correctional Institutions, with eighteen years to serve and the balance suspended, with probation.  On appeal, Barboza contends that the trial justice erred in denying his motion for a mistrial because, he argues, the state posed a question to the complaining witness that was highly prejudicial and violated a Superior Court pretrial order.

This appeal came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and having reviewed the memoranda filed by the parties, we are satisfied that cause has not been shown, and we proceed to decide this appeal at this time. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## Facts and Travel

Based on the record before this Court, on November 14, 2016, defendant was indicted by a grand jury on seven counts of child molestation sexual assault. The first three counts alleged crimes committed against defendant's son, Matthew, and were subsequently dismissed pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure. The remaining counts alleged crimes against Jane,[1] including three counts of first-degree child molestation sexual assault, in violation of G.L. 1956 § 11-37-8.1, and one count of second-degree child molestation sexual assault, in violation of § 11-37-8.3.

---

[1] We used a pseudonym to protect the privacy of the complainant, who was a minor at the time of these offenses and during the January 2019 jury trial. She will be referred to herein as Jane or complainant. We are also using pseudonyms to refer to defendant's son (Matthew), as well as the complainant's brother (John), who were also minors at all relevant times in this case.

This case proceeded to trial three times; the first two trials resulted in mistrials. After the third trial, although the jury was not able to reach a unanimous verdict on the counts alleging first-degree child molestation sexual assault, the jury returned a guilty verdict on the one count of second-degree child molestation sexual assault.

Prior to that third trial, the trial justice was called upon to decide several pretrial motions, one of which was defendant's motion *in limine* seeking to exclude testimony from Sonja Medina, a Child Protective Investigator (CPI) from the Department of Children, Youth, and Families. The defendant sought the exclusion of any reference to allegations of defendant's molestation of Matthew, which had prompted the investigation by DCYF, in accordance with Rules 402, 403, and 404(b) of the Rhode Island Rules of Evidence. According to defendant, such testimony about why DCYF and CPI Medina were investigating his home was irrelevant and would tend to indicate that defendant had committed another crime, independent of the crimes for which he was on trial. The motion *in limine* also asserted that the only admissible testimony that could be elicited from CPI Medina was that the complainant had made a disclosure of alleged sexual abuse to CPI Medina, which was information that could have been provided by complainant herself. The state did not object, and the trial justice granted the motion.

At trial, Jane testified that she lived with her father and her younger brother, John, and, prior to that, had lived at a "mini-mansion" with her mother, Mary

Barboza,[2] and Mary's boyfriend; defendant also resided there at the time. The defendant was a friend of Mary's and, according to Mary's trial testimony, he babysat Jane and John whenever Mary was "unavailable[.]" Jane testified that, while in kindergarten, she was moved to a DCYF group home, where she resided from the time she was in kindergarten until first grade. At some point, Jane moved back with her father and visited her mother on weekends and during summer vacation at various residences throughout the years. The defendant and his son, Matthew, who was the same age as complainant, were living with Mary during this time.

Jane testified that she was first inappropriately touched by defendant when she was in kindergarten and they lived at the "mini-mansion." The last incident, she testified, was when she was in fifth grade. She further testified that it was during a health class in sixth grade that she realized she had been touched inappropriately by defendant. The complainant also disclosed that she had been molested by defendant on numerous occasions, whenever she visited her mother. Many of these events included vaginal penetration and oral sex, such as defendant licking Jane's vagina. The defendant would tell Jane that he was not "molesting" or "raping" her and that he was just "loving" her.

---

[2] While defendant and the complainant's mother share the same last name, according to the trial testimony they are not related. We refer to her by her first name for ease of reference; no disrespect is intended.

On another occasion when she was in second or third grade, while visiting her mother at her home in Cranston, Jane was in defendant's room with John and defendant. She and John were playing PlayStation and she was waiting for her turn to play. According to the complainant, defendant pulled her on top of him, put his hands underneath her shirt, and started touching her chest. At that point, Jane's mother walked by the room and began to scream and cry, and Jane jumped and ran to her mother. This encounter formed the basis for the count of second-degree child molestation of which defendant was found guilty. Jane testified that, at that time, although she asked her mother to call the police, her mother did not do so. During her trial testimony, Mary confirmed Jane's account of this incident.

Despite Mary's knowledge of defendant's behavior, defendant, Matthew, and Mary continued to live together, and, Jane testified, defendant continued to molest her. The complainant also admitted that she had engaged in sexual encounters with Matthew and stated that she was not certain if there was vaginal penetration with Matthew because those encounters felt "[c]omfortable[,]" whereas defendant's acts of molestation upon her were "[d]ifferent"; according to Jane, it felt "uncomfortable" and "it hurt." Thus, Jane was certain that there had been penetration with defendant.

The record shows that, after Matthew reported that he had been molested by defendant and DCYF became involved, Jane first revealed defendant's crimes to CPI Medina. However, evidence of the allegations concerning Matthew were never

- 5 -

presented to the jury because, as noted *supra*, those counts had been dismissed prior to trial. It was that investigation, however, that led to a DCYF interview of Jane and John, a police report regarding Jane's allegations, and a physical examination of Jane by Christine Barron, M.D., who testified at trial about Jane's "penetrating vaginal trauma[.]" Detective Michael Iacone, of the Cranston Police Department, who was the responding officer, also testified.

CPI Medina did not testify at trial, but during direct examination of complainant by the state, the following exchange occurred:

> "[THE STATE:] [Jane], do you remember the first time that you told anybody about these incidents with the defendant?
>
> "[JANE:] Yes.
>
> "[THE STATE:] Who did you first share this information with?
>
> "[JANE:] DCYF worker.
>
> "[THE STATE:] And did you offer the information to the DCYF worker, or were you asked?
>
> "[JANE:] I was asked."

The trial justice, *sua sponte*, struck the answer and question, ordered the jury to disregard them, and excused the jury. Defense counsel then raised two reasons why the last question and answer were troublesome: One was that it was hearsay, and the other was that it suggested that there was a reason as to why DCYF asked

complainant that question. The trial justice declared, "It's a terrible question. It suggests that DCYF out of the blue asked [Jane] if [defendant] molested her." The trial justice directed that counsel take a break and be prepared to further address the issue.

The next day, defense counsel pressed for a mistrial and asserted that the question posed by the state elicited a response that was so prejudicial that the bell could not be unrung. The defendant pointed to the trial justice's prior ruling on defendant's motion *in limine* precluding CPI Medina as a witness as grounds for the mistrial. The defendant explained that, after the question to Jane about whether she offered the information or was asked, the state opened the door for the jury to consider whether there was another reason for CPI Medina to ask Jane whether she had been inappropriately touched, such as other allegations against defendant. Defense counsel also noted that she had not offered a curative instruction because she was unsure that it could have remedied the purported prejudice.

The state argued in opposition to the motion to pass the case that testimony had already been presented to the jury that Jane had previously been in a DCYF group home and that she had been subjected to sexual encounters with both defendant and Matthew. The state suggested that, in order for the jury to link the question at issue regarding DCYF's discussion with the complainant to other possible crimes by defendant, the jurors would have to engage in impermissible

speculation. As a remedy, the state suggested a curative instruction that the jury could not speculate as to why DCYF was involved with Jane.

Upon reflection and with the benefit of the overnight recess, the trial justice stated as follows:

> "The DCYF worker may well have been talking to this girl for totally other reasons.
>
> "This jury clearly heard that she was removed from her home as a kindergarten kid; that she lived at a DCYF group home at age five; that she was returned to her father, but was allowed to spend weekends and summers with her mother. * * *
>
> "So the fact that DCYF may have been following up with this child might not, to this jury, be as unusual as the fact that DCYF ever took this child to begin with at age five.
>
> "And there's no evidence, whatsoever, to be triggered back to this defendant."

The trial justice concluded that the testimony "meant a lot more to us, knowing the back story, than it did to the jury." Therefore, the trial justice denied the motion for a mistrial and the trial continued, resulting in defendant's conviction on the count of second-degree child molestation sexual assault, and the dismissal of the remaining counts. The defendant filed a timely notice of appeal on June 3, 2019.

The sole issue before this Court is whether the trial justice abused her discretion in denying defendant's motion for a mistrial after the state elicited this challenged testimony from Jane involving this allegedly highly prejudicial evidence.

- 8 -

Based on our careful review of the record, we are satisfied that the trial justice properly weighed the potential impact of the statements from the complainant and that the trial justice did not exceed the bounds of her discretion in denying defendant's motion for a mistrial.

**Standard of Review**

It is well settled that, when called upon to review a trial justice's ruling on a motion for a mistrial, this Court affords the decision great weight and will disturb the decision only if it was clearly wrong. *State v. Fry*, 130 A.3d 812, 828 (R.I. 2016). We have stated that "[t]he trial justice has a 'front row seat' during the trial so that [the trial justice] can best evaluate the effects of any prejudice on the jury." *State v. Barkmeyer*, 949 A.2d 984, 1007 (R.I. 2008) (quoting *State v. Tempest*, 651 A.2d 1198, 1207 (R.I. 1995)). As such, in ruling on a motion for a mistrial, "the trial justice must determine whether the evidence would cause the jurors to be so inflamed as to make them unable to decide the case on the basis of the evidence presented." *State v. Enos*, 21 A.3d 326, 332 (R.I. 2011) (quoting *State v. Luciano*, 739 A.2d 222, 228 (R.I. 1999)).

Regarding potentially prejudicial evidence at trial, we have held that "if the prejudice can be cured, a mistrial will be ordered only if we are convinced that the cautionary instructions were untimely or ineffective." *State v. Mendoza*, 889 A.2d 153, 158-59 (R.I. 2005) (alterations omitted); *see State v. Disla*, 874 A.2d 190, 198

(R.I. 2005). "In the absence of any indication that the jury was not capable of complying with the trial justice[']s cautionary instruction, this [C]ourt must assume that the jury did disregard the witness['s] comments as it was instructed to do." *Disla*, 874 A.2d at 198 (quoting *State v. Powers*, 566 A.2d 1298, 1304 (R.I. 1989)).

**Analysis**

In order to determine whether a remark is prejudicial, such that a mistrial is in order, "the trial justice 'must evaluate the probable effect of the statement on the outcome of the case by examining the remark in its factual context.'" *State v. Dubois*, 36 A.3d 191, 197 (R.I. 2012) (quoting *State v. Yelland*, 676 A.2d 1335, 1337 (R.I. 1996)). A statement is held to be sufficiently prejudicial when it is "extraneous to the issues before the jury and tends to inflame the passions of the jury." *State v. Rosario*, 14 A.3d 206, 215 (R.I. 2011) (brackets omitted) (quoting *State v. Monteiro*, 924 A.2d 784, 792 (R.I. 2007)). "Furthermore, rather than using some prescribed formula for determining prejudice, we have observed that 'potentially prejudicial evidence must be viewed in the context in which it appeared and in light of the attendant circumstances.'" *State v. Rushlow*, 32 A.3d 892, 897 (R.I. 2011) (quoting *Rosario*, 14 A.3d at 215).

The defendant contends that "everyone agreed" that the testimony pertaining to whether complainant disclosed defendant's inappropriate touching to DCYF or whether it was DCYF that inquired of the complainant was prejudicial. The

defendant also asserts that, based on the trial justice's initial comments about the troublesome nature of the state's question, as well as her conclusion that a curative instruction would only highlight the issue, it is clear that a mistrial was the only appropriate remedy. The defendant further avers that the trial justice's later conclusion that the improper question and answer may have been equivocal based on the prior testimony that Jane had been in DCYF custody at a younger age was an impermissible hypothetical. According to defendant, there was no indication at the time of this testimony that DCYF conducted any check-ins during the years after Jane had been in DCYF custody in kindergarten or first grade; therefore, defendant contends, there would have been no reason for the jury to consider that DCYF was merely asking as part of a check-in.

On the other hand, the state argues that CPI Medina asking complainant if she had been touched was not an inquiry that would inflame the jury and, thus, did not require a mistrial. The state claims that nothing prevented the jury from calmly and dispassionately considering the evidence, taking all of the circumstances surrounding the exchange into consideration. The state also points to the fact that defendant was convicted on the only count supported by testimony of a third-party witness, demonstrating, according to the state, a careful and dispassionate analysis of the evidence by the jury. Furthermore, the state avers that, even if an issue arose

- 11 -

from this limited exchange between the state and complainant during direct examination, less drastic remedies were available, such as a curative instruction.

The defendant claims that this case is similar to *State v. Pugliese*, 117 R.I. 21, 362 A.2d 124 (1976). In our opinion, however, defendant's reliance on *Pugliese* is misplaced. In *Pugliese*, this Court held that a witness's reference to the defendant having been at the "ACI" was prejudicial and could have negatively influenced the jury. *Pugliese*, 117 R.I. at 27, 362 A.2d at 127. In that case, the Court noted that the statement was "susceptible of the inference" that the defendant had been convicted for other crimes or was friends with a particular criminal. *Id.* at 26, 362 A.2d at 126.

We see nothing in the record before us suggesting that the jurors could have been so inflamed by this brief exchange such that they would be unable to examine the evidence in a calm and dispassionate manner. It is clear that the trial justice carefully assessed the potential impact of the question and answer, and reviewed the prior testimony, including Jane's testimony about having lived in a DCYF group home. The trial justice concluded that the jury was not aware of the allegations that the defendant molested his son, which led to DCYF's involvement in this case. The trial justice offered to give a curative instruction but then realized that it would only highlight the issue; however, defense counsel accepted the trial justice's suggestion to merely instruct counsel for the state to refrain from eliciting hearsay responses.

Furthermore, the jurors returned a guilty verdict on only the count charging the defendant with second-degree child molestation sexual assault and found the defendant not guilty of the more serious offenses of first-degree child molestation sexual assault, thus demonstrating that the jury was capable of evaluating the evidence dispassionately and without undue prejudice. *See State v. Werner*, 830 A.2d 1107, 1113 (R.I. 2003) (noting that the jurors acquitted defendant on one charge, which indicated that they were able to fairly evaluate the evidence).

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The papers in this case may be returned to the Superior Court.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Robert P. Barboza. |
| **Case Number** | No. 2020-53-C.A. <br> (P1/16-3254A) |
| **Date Opinion Filed** | November 18, 2021 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Netti C. Vogel |
| **Attorney(s) on Appeal** | For State: <br><br> Owen Murphy <br> Department of Attorney General |
| | For Defendant: <br><br> Megan F. Jackson <br> Office of the Public Defender |

SU-CMS-02A (revised June 2020)